Turner, J.
 

 Our question in this appeal is: Does it affirmatively appear from the assigned errors and the record that the defendant was prejudiced or was prevented from having a fair trial? Our question here is not whether there was error at the trial, but whether it affirmatively appears from the record that the defendant was prejudiced by any such error or thereby prevented from having a fair trial.
 

 Section 13449-5, General Code, provides:
 

 . “No motion for a new trial shall be granted or verdict set aside, nor shall any judgment of conviction be reversed in any court in case of any inaccuracy or imperfection in the indictment, information or warrant, provided that the charge be sufficient to fairly and reasonably inform the accused of the nature and cause of the accusation against him; nor for any variance between the allegations and the proof thereof unless the accused is misled or prejudiced thereby; nor for the admission or rejection of any evidence
 
 *477
 
 •offered against or for the accused unless it affirmatively appears on the record that the accused was or may have been prejudiced thereby; nor for any misdirection of the jury unless the accused was or may have been prejudiced thereby; nor for any other cause whatsoever unless it shall affirmatively appear from the record that the accused was* prejudiced thereby or was prevented from having a fair trial. ’ ’
 

 Defendant’s assignments of error will be considered in order.
 

 (1) The first is the overruling by the trial court of •defendant’s motion to order the prosecuting attorney to furnish defendant a bill of particulars setting up specifically the nature of the offense charged, which motion, followed the failure of the prosecuting attorney to furnish defendant with a bill of particulars upon seasonable request therefor.
 

 On March 4, 1946, in the Municipal Court, defendant was charged with murder and w.as arraigned in such court on the following day. Before a preliminary hearing was had,, the grand jury returned an indictment in short form (Section 13437-6, General Code) against the defendant charging murder in the first degree.
 

 On March 22, 1946, defendant was arraigned in the Court of Common Pleas and entered a general plea of not guilty.
 

 On May 24, 1946, defendant requested of the prosecuting attorney a bill of particulars which was refused.
 

 On May 24, 1946, defendant filed his motion for an order of court requiring the prosecuting attorney to furnish such bill of particulars. On May 31, 1946, such motion was overruled and the defendant was placed on trial on June 3, 1946. Prior to the taking of testimony defendant renewed his motion for a bill of particulars.
 

 
 *478
 
 Defendant’s written request to the prosecuting attorney for a bill of particulars reads as follows:
 

 “Now comes the defendant Julius Anthony Petro, and hereby requests the prosecuting attorney of Cuyahoga county, Ohio, to furnish a bill of particulars setting forth specifically the nature of the offense charged in'the indictment returned in the above matter pursuant to the provision's of Section 13437-6, General Code, said bill of particulars to contain the following:
 

 “A detailed statement of the particular acts, conduct, methods or means by which the state of, Ohio claims that the defendant unlawfully, purposely and of deliberate and premeditated malice killed Theodore Knaus.”
 

 Upon refusal of the prosecuting attorney to furnish such bill of particulars,, a motion was filed in the trial court for an order on the prosecuting attorney to furnish defendant with such bill. This motion in pax-t reads:
 

 “Defendant says further that no preliminary examination was accorded him before a magistrate or any other authorized' official; that he was accorded no opportunity to meet his accusers face to face and to cross-examine them; and that by reason thereof he is wholly uninformed as to the nature and cause of the accusation agaixxst him.
 

 “Your petitioner says further that said indictment is vague, indefinite, uncertain axxd insufficient, in general terms and conclusions-; that he is unable from a reading of said ixxdictment to reasonably know the nature and cause of the charge against him; he is unable, to prepare an intelligent defense thereto, and in order that this defendant may be fairly informed of what the state claims, and with what crime, if any, he is charged, and so that this defendant will be pro
 
 *479
 
 tected in Ms constitutional rights, the prosecuting attorney should be required to particularize as follows:
 

 “By setting forth the facts upon which the offense attempted to be charged is founded, and the particular-acts, conduct, methods or means by which the state claims the defendant committed the alleged offense.
 

 “Your petitioner-says further that on the 24th day of May, 1946, he served upon the prosecuting attorney of Cuyahoga county, Ohio, a request for a bill of particulars in this matter in order that the defendant might be able to ascertain the nature and cause of the charge against him; that said request was refused by said the prosecuting attorney of Cuyahoga county, OMo, on the 24th day of May, 1946, and that if defendant is forced to trial without first being furnished a bill of particulars pursuant to Section 13437-6, General Code; .the said action will constitute a violation of the constitutional rights of the defendant guaranteed him under Article I, Section 10 of the Constitution of Ohio, and the 14th Amendment to the Constitution of the United States.
 

 “Wherefore, your petitioner moves this honorable court for an order requiring the prosecuting attorney of Cuyahoga county, Ohio, to furnish him with said bill of particulars at a time to be fixed by the court and before trial herein.”
 

 Prior to the enactment in 1929 of Amended Senate Bill No. 8 to revise and codify the Code of Criminal Procedure of Ohio (113 Ohio Laws, 123
 
 et seq.),
 
 it was necessary in an indictment for murder in the first degree to set forth the manner in which or the means by which the death was caused. By Section 13 of Chapter 16 of such amended senate bill it was provided for the first time in Ohio that in' an indictment for murder in the
 
 first
 
 degree the manner in which or
 
 *480
 
 the means by which the death was caused need not be set forth. Such Section 13 (now Section 13437-13, General Code) reads:
 

 “In an indictment for murder in the first or second degree or manslaughter, the manner in which, or the means by which the death was caused need not be set forth.”
 

 Prior to- such enactment, there was. a similar provision respecting an indictment for murder in the
 
 second
 
 degree or manslaughter. See former Section 13583, General Code, Section 7217, Revised Statutes, 66 Ohio Laws, 301, Section 92. However, the enactment of Section 13437-13, General Code, did not nullify or modify the proviso in Section 13437-6, General Code, which was also a part of Amended Senate Bill No. 8 (113 Ohio Laws, 123).
 

 In such amended senate bill it was provided in Section 6 of Chapter 16 (113 Ohio Laws, 164, now Section 13437-6, General Code), in part as follows:
 

 “The following forms may be used in the cases in which they are applicable, but any other form, authorized by this or any other law of this state may also be used, and other brief and comprehensive forms applicable to other offenses may be used.
 

 *****
 

 “Murder in the first degree — A. B. unlawfully, purposely and of deliberate and premeditated malice, killed C. D.; or, A; B. did unlawfully, purposely and while in the perpetration of (or attempting to perpetrate) a burglary, kill C. D.
 

 * * * * , *
 

 “Provided, that the prosecuting attorney, if seasonably requested by the defendant, or upon order of the court, shall furnish a bill of particulars setting up specifically the nature of the offense charged.”
 

 A bill of particulars was unknown to Ohio criminal
 
 *481
 
 procedure prior to the enactment of Amended Senate Bill No. 8.
 
 State
 
 v.
 
 Boyatt,
 
 114 Ohio St., 397, 151 N. E., 468. However, bills of particulars were recognized in the federal courts and several of the state courts.
 

 In 2 Bishop on Criminal Procedure (2 Ed.), Section 643, it is said:
 

 “An indictment which the court cannot pronounce ill may still omit details of which the defendant is justly entitled before trial.”
 

 This is particularly true of an indictment in short form. To insure compliance with the terms of Section 10, Article I of the Ohio Constitution, the General Assembly in the same legislation authorizing the short form of indictment passed the provision whereby the prosecuting attorney, if seasonably requested, is required to furnish a bill of particulars setting forth more fully the details of the offense charged. However, this provision does not require the prosecuting attorney to disclose the evidence by which he expects to prove the offense.
 

 In the case of
 
 State
 
 v.
 
 Whitmore,
 
 126 Ohio St., 381, 185 N. E., 547, it was held:
 

 “2. Section 13437-6, General Code, requiring that the ‘prosecuting attorney, if seasonably requested by the defendant, or upon order of the court, shall furnish a bill of particulars setting up specifically the nature of the offense charged,’ is a reasonable provision,, procedural in substance, and denies no lights guaranteed to a person accused of crime. * * *
 

 “5. An accused person has no common-law rights in Ohio, as there are neither common-law crimes nor common-law criminal procedure in this state. * * *
 

 “10. ‘Certainty to a common intent’ means that ‘a criminal charge should be preferred with such certainty and precision as will reasonably apprise the party charged of that which he may expect to meet
 
 *482
 
 and be required to answer, and so that the court and jury may know what they are to try and the court may determine without unreasonable difficulty what evidence is admissible; also that the record to be made will be sufficiently definite to make it clear of what the party has been put in jeopardy.’
 
 (Du Brul
 
 v.
 
 State, 80
 
 Ohio St., 52, approved and followed.)”
 

 In the
 
 per curiam
 
 opinion in the case of
 
 State
 
 v.
 
 Hutton,
 
 132 Ohio St., 461, 464, 9 N. E. (2d), 295, it was held:
 

 ' “Therefore, if. the defendant felt that the affidavit was not sufficiently definite to inform him as to the charge preferred against him, it was his privilege and duty to seasonably request of the prosecutor or the court a bill of particulars setting up more specifically the nature of the offense charged. This he failed to do. Hence the lower courts were correct in holding that the matter was waived when the defendant proceeded to trial.”
 

 In the
 
 per curiam
 
 opinion in the case of
 
 State
 
 v.
 
 DeRighter,
 
 145 Ohio St., 552, 556, 62 N. E. (2d), 332, it was held:
 

 “Hence, it is clear that the purpose of a bill of particulars is not to disclose the state’s evidence but simply to state specifically the nature of the offense charged.”
 

 . In 21 Ohio Jurisprudence, 115, Section 49, it is said in respect of the present law:
 

 “Bills of particulars have taken away much of the reason for undue prolixity in indictments * *
 

 On page 116,
 
 ibid.,
 
 it is said in Section 50:
 

 “The brevity with which the offense is permitted to be stated might seem to indicate that the accused will have little notice upon which to base a defense. However,', he is entitled to a bill of particulars, if he makes seasonable request for it, which will set
 
 *483
 
 out specifically the nature of the offense charged.”
 

 On page 122,
 
 ibid.,
 
 Section 54, it is said:
 

 “As has been stated, the manner in which, or the means by which, the death was caused need not be set forth [in the indictment]. The bill of particulars which may be requested by the defendant will supply those details which formerly it was necessary to set out in the indictment.”
 

 In 42 Corpus Juris Secundum, 1094, Section 156, it is said: ,
 

 “* * * in jurisdictions in which a short or simpli-' fied form of indictment has been authorized the statute usually requires the state to file a supporting bill of particulars on demand by accused.”
 

 In a note on the same page it is said:
 

 “Purpose of bill where short form is used is fully to protect accused, who has been indicted under such form, in his constitutional right to be informed of the nature and cause of the accusation against him, and for this reason, the provision as to a bill of particulars, where a short form of indictment is used, should be liberally interpreted.”
 

 In the same section on page 1096 it is said:
 

 “* *
 
 *
 
 and statutes requiring the state to furnish accused with a bill of particulars where a short or simplified form of indictment is employed, usually are mandatory, entitling accused to a bill as a matter of right.” See, also,.27 American Jurisprudence, 671
 
 et seq.,
 
 Section 111
 
 et seq.
 

 Both parties refer to two Court of Appeals cases where bills of particulars were sought. Each of such cases unsuccessfully sought review in this court. *
 

 In the first of these,
 
 State
 
 v.
 
 Hahn,
 
 133 Ohio St., 440, 14 N. E. (2d), 354, the appeal of right was dismissed for the reason that no debatable constitutional question was involved.
 

 
 *484
 
 Likewise, in the other case,
 
 State
 
 v.
 
 Collett,
 
 144 Ohio St., 639, 60 N. E. (2d), 170, the appeal as of right was dismissed for the reason that no debatable constitutional question was involved.
 

 In the
 
 Hahn case
 
 defendant was not only furnished a bill of particulars but also a supplemental bill of particulars. ■ The only complaint was upon the ground that such bills of particulars did not disclose other crimes permitted to be shown in evidence under Section 13444-19, General Code.
 

 In the
 
 Collett case
 
 there was a confession. While the Court of Appeals was unanimous in holding that the failure to furnish a bill of particulars was error, a majority of the court felt that under the circumstances of'that ease such refusal was not prejudicial error. In that case there had been a confession and the case was tried around such confession.
 

 In the case of
 
 State
 
 v.
 
 Anderson,
 
 10 Wash. (2d), 167, 180, 116 P. (2d), 346, it was said:
 

 “The state’s case was necessarily based upon and built around the confession and admissions of appellant. We cannot conceive of any fact which the state, by way of bill of particulars or by way of making the information more definite and certain, could have furnished him that was not already locked up in his own breast.”
 

 In the state’s brief in the instant case it is said:
 

 “It is obvious the defendant had knowledge of the facts and evidence of the state as to manner and means and place of the alleged offense. The record shows further that the defendant’s counsel had this in their possession long before trial, in fact just a few days after the finding of the body of the deceased, a copy of the coroner’s verdict and the autopsy report, wherein it specifically set forth the time, place, means and manner of death.”
 

 
 *485
 
 Assuming the correctness of the foregoing statement, it is to be pointed out that the coroner’s verdict showed that the death occurred on March 2, while the indictment alleged such death as on or about February 27. The evidence conflicts as to the exact time of death. In his argument to the jury the assistant prosecuting attorney said:
 
 “* *
 
 * the time of death of Knaus is fixed definitely and conclusively, being somewhere around 12 o’clock midnight or early after 12, the morning of the 28th. ’ ’1
 

 The indictment so far as material reads as follows:
 

 “Do find and present, that Julius Anthony Petro on or about the 27th day of February; 1946, at the county aforesaid, unlawfully, purposely and of deliberate and premeditated malice kill Theodore Knaus.”
 

 It will thus be seen that the date in the indictment conflicts xwith the date in the coroner’s verdict. The indictment does not show either the manner or means by which it was claimed that Theodore Knaus was killed. Two revolvers were stolen at the time of a burglarly alleged to have preceded the homicide. The evidence is clear, and the state does not dispute, that neither of such revolvers was used in the commission of the murder. Neither does the indictment show the place where the, killing took place, the county only being alleged.
 

 In the state’s brief it is further said:
 

 “Had counsel advised the state and the court of his intention to set up an alibi as a defense, then under those circumstances he would undoubtedly have been granted a bill of particulars for the reasons assigned by the court in the ‘Collett’ case.”
 

 There is no such condition contained in Section 13437-6, General Code.
 

 We are of the opinion that seasonable request was
 
 *486
 
 made upon the prosecuting attorney and for an order of court directing the prosecuting attorney to furnish a bill of particulars setting up specifically the nature of the offense charged. We are of the further opinion that the failure of the prosecuting attorney to furnish such bill of particulars and the overruling by the court of defendant’s motion to order the prosecuting attorney to furnish such bill of particulars, was1 error, and that it affirmatively appears from the record that the accused was thereby prejudiced and thereby prevented from having a fair trial.
 

 (2) Defendant’s second assignment is the claimed error of admitting in evidence state’s exhibit 12, being the certified copy of the coroner’s verdict which contained incompetent evidence. This assignment of error may be disposed of quickly. Counsel for defendant cross-examined the coroner in detail as to the contents of the copy of the coroner’s, verdict. Therefore, we need not examine Section 2855-11, General Code, for the reason that sueh cross-examination by defendant’s counsel made the exhibit competent. In holding that there was no prejudicial error in the introduction of this exhibit 12, we do not want to be understood as approving the constant interruption by the assistant prosecuting attorney of the cross-examination of the state’s witness. Neither do we wish to be understood as approving the competency of any hearsay contained in such exhibit.
 

 (3) Defendant’s third assignment of error relates to the questions asked and testimony offered of ballistic experts. Defendant’s objection to such questions and answers went to the weight rather than to the competency of the testimony.
 

 (4) Defendant’s fourth assignment of error is that the trial court erred in excluding testimony offered by defendant, notwithstanding it was later admitted
 
 *487
 
 upon withdrawal of objection by state. The record discloses that defendant started to examine a witness, intending to establish an alibi. Notice had not been filed or served on the prosecuting attorney of defendant’s intention to claim an alibi. (Section 13444-20, General Code.) The court, sustained the prosecuting attorney’s objection, after defendant’s counsel had stated what the witness would say if permitted to answer. A recess was taken. The prosecuting attorney withdrew his objection and defendant was given the privilege of. pursuing his alibi evidence, which went in by agreement of counsel. No prejudicial error occurred thereby or in the charge of the court on the subject.
 

 (5) The fifth assignment of error is that the court made remarks highly prejudicial to defendant’s cause. During the
 
 voir clire
 
 examination of prospective jurors, the court said: “The indictment by the grand jury results from what is known as an
 
 ex parte
 
 or one-sided hearing. The state’s witnesses appear there, and if the grand juty, or 12 of them out of the 15 grand jurors, deem that the one charged with the crime is guilty, then the indictment is returned.”
 

 In the assignment of error defendant omitted the following sentence which immediately followed the foregoing quotation: “If a plea of not guilty is entered, then the defendant is entitled to the legal presumption of. innocence.”
 

 Later, during the
 
 voir dire
 
 examination the court said: “The indictment, however, is not any evidence of guilt against a defendant. The reverse of that is true. Under the law of every state in the United States and even .in the federal courts, one charged with a criminal offense is presumed to be innocent.” No prejudicial error occurred in respect of this assignment. (See 20 Ohio Jurisprudence, 172, Section 60.)
 

 
 *488
 
 (6) The defendant assigns error in respect of the treatment of Donald Lemmo, a defense alibi-witness. During the cross-examination of this witness it developed that the witness had been convicted of burglary and placed on probation. Questions were asked which developed the violation of this witness’ probation. After this witness’ examination, the court said:
 

 “He will be retained in the custody of the court. (To an officer) Will you take him? He is in the custody of an officer of the court. After the jury has come back, if you have further questions of him, before he is sent to the reformatory or penitentiary, whichever it happens to be he will be available. *
 

 * # * #
 
 m
 

 “It is high time this court steps in, in a situation of this kind. And the record may show the court said that.”
 

 In addressing the jury the court said:
 

 “The reason the court permitted those inquiries as to his conviction of a felony — I think he stated that it was burglary, the witness — because the law of the state of Ohio provides, in Section 13444-2 of the General Code, Criminal Code of this state, that prior conviction of crime may be shown for the purpose of affecting the credibility of such witness and only for that purpose. And under that provision of the Criminal Code of this state, the court permitted the questions of the prosecutor in reference to whether the witness knew the conditions upon which he was. placed on probation . after being convicted of that charge of burglary. It may be considered by you members of the jury solely for that purpose.”
 

 Error was also assigned for the reason that the trial court caused the arrest of the witness, Lemmo, and ordered him turned over to the probation department, in the presence of the jury and during the examination of the witness.
 

 
 *489
 
 The bill of exceptions discloses the following which occurred during the cross-examination of the witness, Lemmo:
 

 “The Court: Well, this court wasn’t the judge in that case, but whoever the judge was, Mr. Prosecutor (inaudible).
 

 “Mr. DeMarco [assistant prosecuting attorney]: I didn’t hear your Honor.
 

 “The Court: I say, whoever the judge was in the case, bring that to his attention. Turn him over to the probation department. ’ ’
 

 Later the following occurred:
 

 “The Court: What witness are you waiting for?
 

 “Mr. Picciano [defendant’s counsel]: Don Lemmo, your Honor.
 

 “The Court: The Sheriff is bringing him down from jail.”
 

 It would unduly extend this opinion to set out more of the evidence and proceedings in respect of this assignment of error. However, we have carefully examined the bill,of exceptions and are of the opinion that the court did not abuse its discretion, and we find no prejudicial error in this respect. »
 

 (7) Defendant’s seventh assignment of error is that there was misconduct on the part of the prosecuting attorney, preventing defendant from having a fair and impartial trial. The following statement of the court in respect of,one instance is revealing:
 

 “The Court: The court will agree that it never witnessed a scene like that. It was a bit of horseplay on the part of the prosecutor and counsel for the defendant. The court is using words advisedly.
 

 “The court sat here for two weeks. After having been on the bench and tried dozens of homicide cases, perhaps dozens of first-degree murder cases, I appreciate fully the circumstances under which a de
 
 *490
 
 fendant is being tried for first-degree murder. * * * The court doesn’t recall that in the record of the case there was any objection made by counsel for the defendant. The court may have missed something, but the court was listening rather intently at that time for an objection, and had an objection been made, brought to the attention of the court, the court would have sustained the objection. Since the court felt at the time, as it visualizes that scene and recalls the testimony, it was so unusual that the court would have sustained an objection.” The court was here referring to the examination of a single witness.
 

 In the case of
 
 Hayes
 
 v. Smith, 62 Ohio St., 161, 56 N. E., 879, this court held:
 

 “8. It is a duty of the trial court which is not merely discretionary, when counsel grossly abuses his privilege to the manifest prejudice of the opposite party, to interpose and admonish the offending counsel and to instruct the jury in regard thereto; and if it fail' to do so, it is ground for a new trial.”
 

 In 39 Ohio- Jurisprudence, 691
 
 et seq.,
 
 Section 114,. it is said:
 

 “As the Ohio Supreme Court has pointed out, it is the duty of the trial judge to prevent and suppress such misconduct on the part of counsel towards witnesses as tends to suppression of the truth; all declarations of fact by counsel during the introduction of evidence; the repetition of incompetent questions to which objections have been sustained; and all comments upon the- evidence until time for argument has arrived. He should not hesitate to reprimand any counsel deliberately guilty of any such conduct. And when counsel grossly abuses his privileges to the manifest prejudice of the opposite party, the duty of the trial judge to interpose and admonish the offending counsel and to instruct the jury in regard
 
 *491
 
 thereto is not merely discretionary; he should, in such case, interpose and correct such wrong without waiting to be reminded of it by opposing counsel. Failure to do so is ground for a new trial.
 

 “Generally speaking, however, if any misconduct occurs during trial, counsel for the party injured should at once call the court’s attention thereto, otherwise he will lose his right to insist thereon as a ground for a new trial or reversal, unless, as stated above, the misconduct is so gross as to be manifestly prejudicial.”
 

 In the case of
 
 C. P. & E. Rd. Co.
 
 v.
 
 Pritschau,
 
 69 Ohio St., 438, 69 N. E., 663, 100 Am. St. Rep., 682, it was said by Judge Shauck at page 446, speaking for a unanimous court:
 

 “Throughout the record a trial judge, personally distinguished for learning and probity, appears as a grieved observer of continued improprieties which he thought himself powerless to suppress. It is entirely clear that he was unable to end them by admonition and entreaty, but he was clothed with ample power to suppress them inexorably. The county in which he sat has the complement of county buildings. From the body of the people a few are selected as members of the' bar because their qualities are supposed to authorize the expectation that they will render important aid in the administration of justice. Some prime mistakes in the selection are remediable. If the court had sustained the motion for a new trial it would have been a too long deferred recognition of the rights of the plaintiff in error, though it would have made this proceeding in error unnecessary. That it should have been sustained is obvious. But it is much more important to observe that the trial judge should not have permitted such conduct on the part of counsel as would result in a mistrial. This was
 
 *492
 
 due not only, to the parties to the suit, but to the public. But few pages of this record had unfolded when there was manifest occasion for continuing the cause and dealing with offending counsel according to his deserts. The observations of the trial judge, from time to time, show that he had an intelligent appreciation of the gravity of the offenses which were committed before him. Why he thought it less important to suppress them than to give correct instructions to the jury as to the law of the- case, does not appear. In a comparison of causes, a mistrial because of an erroneous view of the legal rights of the parties would be entitled to more charitable consideration. The suggestion by the trial judge that a course of toleration was chosen because of the inveteracy of counsel’s habit acquired in forty, years of similar practice,f was most unfortunate. Is it necessary to say that there can be no prescriptive right to hinder the administration of justice by conduct which squanders time and leads to mistrials? Can the suggested discrimination against younger members of the bar be justified or even tolerated?
 

 “It is required by the reasons involved and by the decided cases that the judgments of the Court of Common Pleas and the Circuit Court be reversed, and the cause remanded to the former court for a trial according to law.”
 

 ' From our review of the record and the above-quoted language of the trial judge, we assume that the trial court considered the matter of misconduct as a standoff.
 

 Part of the misconduct charged against the assistant prosecuting attorney, in the language of appellant’s brief, “is found in the closing argument when he told the jury that the defendant had been recognized by Mrs. Estrate, # * * as being one of the
 
 *493
 
 occupants of the car that pulled up in front of her home at about midnight on February 27.” In the course of the assistant prosecuting attorney’s argument he made the statement “that Petro, the man seen by the mother, had in his possession some of the property taken from Green’s cafe.” Defendant made no objection.
 

 The assistant prosecuting attorney’s statement is. ambiguous but is interpreted by counsel for defendant as referring to the testimony of Mrs. Estrate that ‘ ‘ she saw the head line of two men sitting in the front seat, but she could not make out who was in it.” Mrs. Estrate had testified that she recognized the car which was driven in front of her house as thé car of Julius Petro but that she “couldn’t make out who was in it.”
 

 Detective Frindt testified as follows:
 

 “Q. When did you next see Mrs. Estrate? A. It was about 12:30 a. m., February 28th.
 

 “Q. Where did you see her? A. At her home, 5914 Vandalia avenue.
 

 “Q. And what did you do there? A. We responded to an office assignment there. She — the call came into the detective bureau, supposedly from Mrs. Estrate, stating that a car had driven up in front of her home, a Buiek sedan had driven up in front of her home which contained her son and Julius Petro.
 

 “Q. Yes? A. We questioned her as to the identity of the occupants of this car and she stated that it was Julius Petro- and her son, Robert, that they drove up in front of her house about 11:45 the previous evening — that was on February 27th, 11:45 p. m.,. and they drove up in front of the house and she looked out of the. window — and she looked out of the window, she — this car drove — backed up down the street, then drove away.”
 

 There was no objection made to the incompetent evidence.
 

 
 *494
 
 Further on in his argument to the jury, the assistant prosecuting attorney said:'
 

 “Yes, Mrs. Estrate did see this car. Mrs. Estrate did tell the police officers what she did. And why didn’t she do that in court? I don’t know. Is she afraid of this defendant? Afraid of someone in this case? Is she afraid that maybe, as someone snuffed out the life of her son, that somone may do her harm or injury? You mull that over in your mind.. Apply your own personal experience in life, determine whether or not that may not be the thing running through that poor woman’s mind.”
 

 Again no objection to such argument was made by , the defendant’s counsel.
 

 Indeed, defendant in his brief apparently claims something for the incompetent testimony brought out by state’s witness when he says:
 

 “The record stands uncontradicted that Mrs. Estrate told the police officers when they called at her home at about midnight on February 27th that she had recognized her son and the defendant, Petro, as the occupants of the automobile. As a matter of fact, it was on account of this statement of Mrs. Estrate, that police began their search for Petro.”
 

 In his argument to the jury one of defendant’s* counsel said:
 

 “Now let’s go a little further. When the police arrived after the call from Mrs. Estrate, at 11:45 p. m. on the 27th, at her home — no, she called the police at 11:45 and the police arrived at her home at 12:15.. I think that is' the testimony. The police talked to her. She told the police, one of these officers said, that she saw an automobile, that she saw Bobbie and Petro in that automobile. That is the testimony of the police officer.
 

 
 *495
 
 “Mrs. Estrate, when she gets on the stand, says, I never told the'policeman that, I cannot identify either person who was in that automobile then, but as far as I know it was neither one of them. Why do we get that kind of testimony? A police officer coming in and saying that the witness told him positively without a question of a doubt that they were in the car, and then she comes in and says no, I never told the police that; and furthermore, I cannot identify either person that was in that automobile.
 

 “Answer, will you, Mr. Prosecutor, why we get that kind of testimony, and explain that kind of evidence.”
 

 In the first place the statement of fact by defendant’s counsel is not borne out by the record. We are unable to find any such denial by Mrs. Estrate. But here was a challenge or provocation and under the circumstances we find no prejudicial error.
 

 In the case of
 
 Scott
 
 v.
 
 State,
 
 107 Ohio St., 475, 141 N. E., 19, it was held:
 

 “2. Improper remarks of counsel for the state during argument, unless so flagrantly improper as to prevent a fair trial, should be at once objected to and exception taken; otherwise error cannot be predicated upon the remarks alleged to have been improper. ”
 

 There was one misstatement made during the state’s closing argument to which objection was made. In attempting to identify defendant- as having been at the supposed scene of the homicide, mud had-been scraped off of the right side of the floor of defendant’s car and there was expert testimony tending to prove that the mud was of the same composition as the mud where the murdered man’s body was found. During the closing argument for the state the record shows:'
 

 
 *496
 
 “Now, just — oh, I wanted to talk about this mud business. Well, first of all Mr. Stanton, may have forgotten, I think probably he did, but the evidence is not to the effect that the mud was gotten from the right side of that car. You may have forgotten that Mr. Stanton. Please, if you remember, sir, through the center of that car there is a sort of cowling and it was to the left of that cowling that this mud came from.
 

 “Mr. Stanton: I object to that, if the court please. Let’s check.
 

 “The Court: The jury will rely on their own recollection. ’ ’
 

 In the state’s brief it is said:
 

 “The state readily admits that the prosecuting attorney was in error, when in his argument to the jury he referred to the fact that the ‘mud’ was found in the front of the car and to the left of the tunnel.”
 

 This was a serious mistake on the part of the assistant prosecuting attorney in the closing argument and should have been corrected immediately. 'The evidence to show defendant’s presence at the alleged scene of the homicide was circumstantial. If the mud was found on the left side of the car (under the driver’s feet) it was of course more persuasive than if such mud were found on the right side which the evidence disclosed that it was.
 

 Shortly before adjournment was taken on the day before the assistant prosecuting attorney in his argument had said:
 

 “Another strange coincidence? What is a coincidence, ladies and gentleman? If it happens twice, it may be a coincidence. But this is not a coincidence, t.bia is a fact, proving definitely and conclusively once again that Petro’s car was present where Knaus was killed; that Petro ^as there, it was his ear he had in Lis possession, the mud was found in his car. That
 
 *497
 
 is definite evidence; you don’t have to guess about that.
 

 “And so, therefore, piecing together our evidence and testimony, the state, through its testimony, ties in Petro and Knaus with the robbery. No question about it, even though they took the necessary precautions to avoid having an eye witness.
 

 “Then we find the cartridge, the bullets, the specimen of mud, all definitely tying the defendant with the murder of Knaus.”
 

 The trial was a long one. The bill of exceptions covers 1423 pages exclusive of a separate volume recording the
 
 voir dire
 
 examination of jurors, etc. Had this been a short trial or the other evidence clearer, it might not have been error to fail to sustain defendant’s objection, but under this record where a man is on trial for his life, it is too serious a case of misconduct on the part of the assistant prosecuting attorney and prejudicial error on the part of the trial court to pass over. Therefore the case should be reversed on this ground.
 

 Another instance of misconduct objected to by the defendant is that the assistant prosecuting attorney in his argument said:
 

 “* *
 
 *
 
 can it be that they did submit them [the bullets and pellets] to Mr. Trunk, the ballistician? And if they did, why isn’t Mr. Trunk here? If, indeed, then their ballistician didn’t find the same results that our ballisticians found, this expert, Mr. Lloyd Trunk, why didn’t they bring him in court? If these photographs do not prove and sustain the opinion submitted by Mr. Cowles, Sgt. Dodge and Patrolman Conley, why vieren’t other photographs made by Mr. Trunk? Can it be then that his findings would substantiate and corroborate those of Superintendent Cowles?
 

 
 *498
 
 '“Mr. Stanton: Now we want to take an exception to the prosecutor’s remarks.”
 

 The record discloses no ruling by the court. However, the fact that one of the parties fails to call a witness who has some knowledge of the matter under investigation may be commented on. See 39 Ohio Jurisprudence, 703, Section 122.
 

 There are other claimed instances of misconduct but we do not find any of them to have amounted to prejudicial error.
 

 (8) The defendant complains of the trial court’s charge in respect of circumstantial evidence. Considering all that was said on the subject by the trial court in his charge, we find no prejudicial error.
 

 (9) The defendant claims that the trial court erred in refusing to instruct the jury as requested by the defendant before argument. In the trial of a criminal case a court is not bound to give to the jury a special instruction before argument.
 

 In the case of
 
 Wertenberger
 
 v.
 
 State,
 
 99 Ohio St., 353, 124 N. E., 243, it was held in the first paragraph of the syllabus:
 

 “Under Section 13675, General Code [now Section 13442-8], the court is authorized but not required at the conclusion of the evidence, upon the request of the state or of the accused, to charge the jury before argument upon the points of law requested and pertinent to the case.” In 39 Ohio Jurisprudence, 1023, Section 308, it is said: “This provision for special instructions before argument [Section 11420-1, General Code] applies only to civil cases.” Section 13442-8, General Code, which prescribes the procedure in criminal trials does not contain a provision similar to paragraph 5 of Section 11420-1, General Code, applicable to civil cases.
 

 (10) Complaint is made by the defendant of the
 
 *499
 
 trial court’s charge to the jury in reference to defense of alibi. We find no prejudical error in this respect.
 

 (11) Defendant’s eleventh assignment of.error is that the court erred in overruling a motion for directed verdict made at the close of the state’s case and renewed at the close of all the evidence.
 

 The evidence in this case disclosed two crimes: First, the robbery of the so-called Green’s Cafe; second, the murder of Theodore Knaus.
 

 A jacket with hunting licenses issued to a brother of defendant was found in defendant’s home. In this jacket there was a St. Francis medal, a valve cap, a valve insert, key ring and some change, which were identified as having been taken from the cash register of the cafe. While this may be considered as some evidence that the defendant had participated in the robbery, when connected up it might also be considered as some evidence that the defendant killed Theodore Knaus.
 

 The testimony of Mrs. Estrate that during the night prior to the killing she had recognized defendant’s car but not the occupants thereof did not amount to testimony that the defendant was in the car.
 
 (Sobolovitz
 
 v.
 
 Lubric Oil Co.,
 
 107 Ohio St., 204, 140 N. E., 634.) While Mrs. Estrate testified that she did not recognize the occupants of the car, we do have the testimony of Detective Frindt that Mrs. Estrate told him that it was Julius Petro and her son, Robert, who drove up in front of her house on the night in question. However, this was hearsay evidence to which the defendant made no objection. As pointed out above, the defendant says that 'the testimony of the officer stands uncontradicted.
 

 As stated in the annotation in 104 A. L. R., 1130: It has been held almost universally (apparently only four or five jurisdictions take a contrary view, as
 
 *500
 
 will be noted) that when hearsay testimony is admitted without objection it may properly be considered and given its natural probative effect a.s if it were in law admissible, the only question being with regard to how much weight should be given thereto.”
 

 The case of
 
 Weaver
 
 v.
 
 State,
 
 120 Ohio St., 97, 165 N. E., 569, is not in conflict with the above quotation from A. L. R.
 

 There was testimony that certain cartridge shells, being exhibits 22, 23 and 24, found in defendant’s car were fired from the same gun as the cartridge case found near the body of the murdered man. Furthermore, there is the testimony that the pellets found in the body of the murdered man were discharged from the same gun as were the pellets found in defendant’s car. There was also testimony that the mud found on defendant’s car was the same in composition as the mud found near the body. We are of the opinion that the trial court committed no prejudicial error in overruling defendant’s motion for directed verdict.
 

 (12) For his twelfth assignment of error defendant says that “the verdict is against the manifest weight of the evidence, and is contrary to law.”
 

 Section 13459-1, General Code, provides in part as follows:
 

 “* * * The Supreme Court in a criminal case or proceeding, except when its jurisdiction is original, shall not be required to determine as to the weight of the evidence.”
 

 As to the latter part of this assignment, defendant is relying upon the case of
 
 Cooper
 
 v.
 
 State,
 
 121 Ohio St., 562, 170 N. E., 355, wherein it was held:
 

 “It is the duty of the Court of Appeals, in reviewing a case upon the weight of the evidence, to determine whether the verdict and/or judgment is sup
 
 *501
 
 ported by the degree of proof which the character of the case requires, and to render its judgment according to such determination.”
 

 There has been no showing that the Court of Appeals in the instant case failed to do its duty in this respect, 20 American Jurisprudence, 174, Section 170.
 

 In
 
 Atkins
 
 v. State, 115 Ohio St., 542, 155 N. E., 189, it was held in paragraph one of the syllabus:
 

 “Ordinarily this court will not consider the mere weight of evidence on review of the record of a trial below, yet, this case being one where the law requires a higher quality and a greater quantity of evidence than is required in ordinary cases' where a verdict is supported by a preponderance of the proof, this court will look to the record to ascertain whether or not the rule has been disregarded. ’ ’
 

 We have examined the record to ascertain whether there was direct or circumstantial evidence which, if believed by the jury, would show defendant’s guilt beyond a reasonable doubt.
 

 Reasonable doubt is defined in Section 13442-3, General Code, as follows: “It is not a mere possible doubt, because everything relating to human affairs or depending upon moral evidence is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction to a moral certainty of the truth of the charge.”
 

 It is the minds of the jurors and not the.minds of the-judges of an appellate court that are to be com vincéd. The jurors see the witnesses and observe their demeanor. The credibility to be given to each and all of these witnesses and to part or all of their respective testimony is for the jury: The question to be detef
 
 *502
 
 mined by an appellate court is: Does the record contain evidence from which a jury would be justified in concluding that the accused was guilty beyond a reasonable doubt? We are of the opinion that there was direct and circumstantial evidence before the jury which, if believed, was sufficient to convince the minds of the jurors of the guilt of defendant beyond reasonable doubt.
 

 As was said by Judge Spear in the case of
 
 Burns
 
 v.
 
 State,
 
 75 Ohio St., 407, 412, 79 N. E., 929:
 

 “We are not concerned to inquire as to the guilt or innocence of the accused. Whether guilty or not, he was entitled, as is every person charged with crime, to a fair trial.”
 

 In the earlier case, of
 
 Miller
 
 v.
 
 State,
 
 73 Ohio St., 195, 76 N. E., 823, Judge Spear said:
 

 ‘ ‘ This court has uniformly refused to set aside judgments of conviction except in cases where the grounds of error were clear and the error manifestly prejudicial. The court is fully aware of the inconvenience and necessary expense incident to another trial of this case, but these considerations lose force where it appears that the accused has not had such a trial as the Constitution guarantees to him and which it is the duty of the trial court to accord. ’ ’
 

 We endorse the foregoing quotations from the opinions written by Judge Spear of this court.
 

 Being of the opinion that it affirmatively appears from the record that the defendant made seasonable request upon the prosecuting attorney to furnish a bill of particulars setting up specifically the nature of the offense charged, that the trial court erred in overruling defendant’s motion requiring the prosecuting attorney to furnish him with a bill of particulars and in overruling defendant’s objection to the conduct of the prosecuting attorney in his closing argument to
 
 *503
 
 the jury, and that the defendant was prejudiced thereby and prevented from having a fair trial, the judgment of the Court of Appeals should be and hereby is reversed and this cause is remanded to the Court of Common Pleas of Cuyahoga county for further proceedings according to law.
 

 Judgment reversed.
 

 Matthias, Hart, Zimmerman, Sohngen and! Stewart, JJ., concur.