THE STATE OF OHIO, APPELLANT, *v.* TROISI, APPELLEE.

[Cite as *State v. Troisi*, 124 Ohio St.3d 404, 2010-Ohio-275.]

*Testimony by a trademark-investigation expert that he is aware that certain trademarks are registered is insufficient to prove that the trademarks are registered for purposes of R.C. 2913.34 if the expert has never personally viewed the trademark-registration documents.*

(No. 2008-2490 — Submitted September 30, 2009 — Decided February 4, 2010.)

APPEAL from the Court of Appeals for Lake County, No. 2008-L-060, 179 Ohio App.3d 326, 2008-Ohio-6062.

_____

SYLLABUS OF THE COURT

A trademark-investigation expert's testimony that he is aware that certain trademarks are registered but that he has never personally viewed the trademark-registration documents is insufficient to prove by itself that the trademarks are registered on the principal register in the United States Patent and Trademark Office as required for a conviction under R.C. 2913.34.

_____

**MOYER, C.J.**

**I**

{¶ 1} This case requires us to determine whether the requirements of R.C. 2913.34(A)(4) (trademark counterfeiting) are satisfied when the state's only evidence regarding the trademarks' registrations is an expert witness who testifies about the registration status of the trademarks without having personally viewed the registry documents. We hold that a trademark-investigation expert's testimony that he is aware that certain trademarks are registered but that he has

never personally viewed the trademark-registration documents is insufficient to prove by itself that the trademarks are registered on the principal register in the United States Patent and Trademark Office as required for a conviction under R.C. 2913.34.

## II

**{¶ 2}** Appellee, Juanita Troisi, hosted a "purse party" in Kirtland, Ohio, where she offered purses and other items for sale. The Kirtland police were informed of this party by an invitee. After determining that "knock-off designer labels" might be sold at the party, Sgt. Jamie Tavano contacted Timothy Richissin for help on the case. Richissin, a sergeant with the Cleveland Police Department, was also employed at the time by the Professional Investigation Consulting Agency, where he specialized in investigating intellectual-property issues. The police conducted a raid of the purse party, seizing over 1,700 allegedly counterfeit purses, wallets, and jewelry pieces. At the scene, the police also obtained a written statement from Troisi in which she admitted knowing that "the purses and wallets were not authentic."

**{¶ 3}** Troisi was indicted on four counts: R.C. 2913.32(A)(4), R.C. 2913.34(A)(4) and (5), and R.C. 2923.24. Two counts were dismissed, and a trial proceeded on one count of trademark counterfeiting (R.C. 2913.34(A)(4)) and one count of possessing criminal tools (R.C. 2923.24). At trial, Richissin testified that he had been trained by several purse and jewelry companies to recognize their trademarks and to recognize counterfeit products. He testified that in his opinion, the items seized from the purse party were counterfeit. No certified copies of the registered trademarks were offered as evidence; no other witness testified about the registration status of the trademarks; and no examples of genuine trademarks or genuine products were introduced at trial.

**{¶ 4}** A jury found Troisi guilty of one count of trademark counterfeiting and one count of possessing criminal tools. The Eleventh District Court of

Appeals reversed, holding that there was insufficient evidence for the jury to find that the items seized bore a counterfeit mark as defined by law and that Richissin's testimony was improper because it was introduced without a proper foundation. Troisi's convictions were vacated. We accepted the state's discretionary appeal.

### III

{¶ 5} The General Assembly has defined the crime of trademark counterfeiting in R.C. 2913.34. R.C. 2913.34(A)(4) provides, "No person shall knowingly * * * [s]ell, offer for sale, or otherwise dispose of goods with the knowledge that a counterfeit mark is attached to, affixed to, or otherwise used in connection with the goods." R.C. 2913.34(F) defines "counterfeit mark" as "a spurious trademark" that is "identical with or substantially indistinguishable from a mark that is registered on the principal register in the United States patent and trademark office" and the use of which "is likely to cause confusion or mistake or [to] deceive other persons."

{¶ 6} Troisi argues that the evidence, including Richissin's testimony, was insufficient to prove that any of the trademarks were registered on the principal register, and that Richissin's testimony was improperly used at trial. The state argues that sufficient evidence was presented and that Richissin's testimony was properly admitted.

{¶ 7} In deciding whether the evidence presented at trial was sufficient to support a criminal conviction, a court must " 'determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.' " *In re Washington* (1998), 81 Ohio St.3d 337, 339, 691 N.E.2d 285, quoting *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. The evidence is viewed in the light most favorable to the prosecution, and a reviewing court will not infringe upon the province of the jury by reweighing the evidence. Id. If the evidence is found to

be insufficient to prove every element beyond a reasonable doubt, the Double Jeopardy Clauses of the United States and Ohio Constitutions bar retrial. *State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, 903 N.E.2d 284, ¶ 15. In contrast, when sufficient evidence has been introduced at trial to convict, "but on appeal, some of that evidence is determined to have been improperly admitted," retrial is not barred. Id. at ¶ 25.

**{¶ 8}** We hold that the state provided insufficient evidence to show that the trademarks Richissin compared with the marks on the seized bags were registered on the principal register in the United States Patent and Trademark Office. The statute contains very specific language protecting only those marks registered on the principal register. Richissin testified that through his "training and experience" he was aware that the marks were registered but that he had personally never seen any documents from the United States Patent and Trademark Office showing the registration. He had never obtained official trademark records, he had never seen any of the trademarks on a registry document, and he did not know when the trademarks were issued, when they expired, or whether they had been renewed. In sum, his testimony was not sufficient to prove beyond a reasonable doubt that the marks were registered. Richissin's testimony proved, at best, that the seized items bore marks that were "identical or substantially indistinguishable" to marks provided to him during his training, but not to any mark proven to be registered as required by the statute.

**{¶ 9}** Nor does Troisi's written confession help the prosecution meet its burden of proving the registration element of the crime. Troisi admitted that she knew that the "purses and wallets were not authentic," but that admission does not prove that any of the marks Richissin used in his comparisons were registered. The confession may be useful to the prosecution in proving other elements of their case, but it does not prove the registry status of any trademark.

**{¶ 10}** This gap in evidence is not due to a "procedural deficiency," permitting a retrial, as suggested by the state. Our holding that the evidence is insufficient for a conviction is based on a review of all the evidence, *including* Richissin's testimony. Double-jeopardy protections therefore attach, and retrial is barred. *Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, 903 N.E.2d 284, at ¶ 15.

**{¶ 11}** We need not address the state's second proposition of law, which argues that the appellate court's decision improperly limited the prosecutor to introducing certified copies of trademark registrations to prove the "identical or substantially indistinguishable" element of the crime. This issue is moot, as the state did not first prove the registration of the trademarks to which the seized trademarks must be identical or substantially indistinguishable.

**{¶ 12}** For the foregoing reasons, we affirm the judgment of the court of appeals.

Judgment affirmed.

PFEIFER, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

LUNDBERG STRATTON and O'CONNOR, JJ., dissent.

_____

**LUNDBERG STRATTON, J., dissenting.**

**{¶ 13}** I respectfully dissent because I believe that the state presented sufficient evidence to support Troisi's conviction for selling counterfeit goods pursuant to R.C. 2913.34(A)(4).

**{¶ 14}** It is a crime to offer for sale and to sell goods with knowledge that a counterfeit mark is attached to or otherwise used in connection with those goods. R.C. 2913.34(A)(4). " '[C]ounterfeit mark' means a spurious trademark or a spurious service mark that satisfies both of the following:

**{¶ 15}** "It is *identical* with or *substantially indistinguishable* from a mark that is *registered* on the principal register in the United States patent and trademark office for the same goods or services as the goods or services to which

or in connection with which the spurious trademark or spurious service mark is attached, affixed, or otherwise used * * *," and "[i]ts use is likely to cause confusion or mistake or to deceive other persons." (Emphasis added.) R.C. 2913.34(F)(1)(a)(i) and (ii).

{¶ 16} A jury convicted Troisi of one count of trademark counterfeiting under R.C. 2913.34(A)(4). However, the court of appeals held that the state provided insufficient evidence that the spurious marks attached to the counterfeit goods were *identical with or substantially indistinguishable* from the authentic trademarks that are registered with the United States trademark and patent office, and therefore, the state's expert was not qualified to testify on that issue. *State v. Troisi*, 179 Ohio App.3d 326, 2008-Ohio-6062, 901 N.E.2d 856, ¶ 37, 40. The court of appeals suggested that the state's expert would have been qualified to testify on this matter if he had personally examined trademarks as they appeared on the principal register. Id. at ¶ 31.

{¶ 17} The majority affirms the court of appeals' judgment, holding that there was insufficient evidence to show that the trademarks at issue were *registered* because Richissin had never personally viewed or obtained any trademark records. Majority opinion at ¶ 8. The majority further states that "Richissin's testimony proved, at best, that the seized items bore marks that were 'identical or substantially indistinguishable' to marks provided to him during his training, but not to any mark proven to be registered as required by the statute." Id. Finally, the majority determines that its decision makes moot the issue whether the appellate court's decision "improperly limited the prosecutor to introducing certified copies of trademark registrations to prove the 'identical or substantially indistinguishable' element of the crime." Id. at ¶ 11.

### Expert Testimony

{¶ 18} In essence, the majority holds that Richissin's training is insufficient to qualify him as an expert to testify as to whether the trademarks at

issue herein were registered or whether they were "identical with or substantially indistinguishable from" the marks on the seized goods because he had not personally viewed the registered trademarks. However, the majority cites no law to support its conclusion that trademark-counterfeiting cases can be proved only by direct evidence or personal observation of the trademark, and R.C. 2913.34 imposes no such limitation. I believe Richissin's training and experience were sufficient to permit him to provide expert testimony that the trademarks in this case were registered and that they were identical or substantially indistinguishable to the marks on the goods seized from Troisi.

{¶ 19} There are few Ohio cases that interpret R.C. 2913.34 and none that address the issue that is currently before this court. However, "Ohio's trademark counterfeiting statute is substantially similar to the federal trademark counterfeiting statute, 18 U.S.C. § 2320(a), which prohibits someone from intentionally trafficking or attempting to traffic in goods or services and knowingly using a counterfeit mark on or in connection with such goods or services." *State v. Christley,* 8th Dist. No. 92546, 2009-Ohio-6635, ¶ 11. Consequently, federal law is persuasive in interpreting R.C. 2913.34.

{¶ 20} While personal observation or direct evidence of a trademark might be the best evidence in a trademark-counterfeiting case, it is not the only means of proving that a trademark is registered. Nor is it the only means of proving that a counterfeit mark is identical or substantially indistinguishable from an authentic mark. See *United States v. Guerra* (2002), 293 F.3d 1279, 1288 ("[Federal trademark law] does not specify the means by which the Government may establish that the marks were 'identical or substantially indistinguishable' "); *United States v. Xu* (Dec. 4, 2008), S.D.Tex. No. H-07-362, 2008 WL 5122125, citing *United States v. Park* (C.A.9, 2006),164 Fed.Appx. 584, 585; *United States v. DeFreitas* (S.D.N.Y.2000), 92 F.Supp.2d 272, 278 (while the government

usually offers a certificate of registration to prove that a mark is registered, "registration can be proved by other types of evidence").

{¶ 21} "Evid.R. 702(B) provides that a witness may qualify as an expert by reason of his or her specialized knowledge, skill, experience, training, or education. Neither special education nor certification is necessary to confer expert status upon a witness. The individual offered as an expert need not have complete knowledge of the field in question, as long as the knowledge he or she possesses will aid the trier of fact in performing its fact-finding function." *State v. Hartman* (2001), 93 Ohio St.3d 274, 285, 754 N.E.2d 1150, citing *State v. Baston* (1999), 85 Ohio St.3d 418, 423, 709 N.E.2d 128; *State v. D'Ambrosio* (1993), 67 Ohio St.3d 185, 191, 616 N.E.2d 909.

{¶ 22} A handbook on intellectual-property crimes published by the United States Department of Justice states that "[w]hen trying to determine which trademarks the defendant infringed, prosecutors and agents should consult with the *victim*. Although the government itself can search for trademarks on the United States Patent and Trademark Office's website, these searches can be cumbersome. Given the range of perceptible elements that can be registered as marks—witness the color pink for Owens-Corning fiberglass, the NBC chime, the Burberry plaid, and the shape of the Coca-Cola bottle (respectively U.S. Trademark Reg. Nos. 1439132 and 2380742, 0916522, 2022789, and 1057884)— the *victim* is *best suited* to identify which elements were registered as marks and which may have been counterfeited." (Emphasis added.) United States Department of Justice, Prosecuting Intellectual Property Crimes (3d Ed.2006) 100 (available at *http://www.usdoj/criminal/cybercrime/ipmanual/ipma2006.pdf*). Thus, trademark owners would also be best suited to instruct others on differentiating between authentic and counterfeit marks and products.

{¶ 23} In the instant case, trademark owners, including Gucci, Prada, Coach, Dior, Fendi, Dooney & Bourke, Tiffany, Burberry, Chanel, Kate Spade,

Louis Vuitton, and Versace, trained Richissin to recognize their registered trademarks. The training also taught Richissin how to recognize counterfeit goods from authentic trademarked goods by looking for "red-flag" indicators with respect to the product's security tags, logos, and packaging. Since 2002, Richissin has attended approximately 30 such training sessions and receives updates regarding product changes by e-mail. Richissin also testified that he has participated in investigating over 50 trademark-counterfeiting cases in the past several years.

**{¶ 24}** Because of Richissin's training and experience, I would find that he was qualified to testify as an expert in trademark counterfeiting.

### Evidence

**{¶ 25}** Richissin testified that through his training he learned that the Gucci, Prada, Coach, Dior, Fendi, Dooney & Bourke, Tiffany, Burberry, Chanel, Kate Spade, Louis Vuitton, and Versace trademarks were registered on the principal register in the United States Patent and Trademark Office. He also testified that the goods offered by the state as evidence were represented as being made by these registered-trademark owners.

**{¶ 26}** Richissin further testified that these goods had marks affixed to them that were identical or substantially indistinguishable from authentic, registered trademarks. For example, he testified that a mark appearing on a purse seized from Troisi was "identical" to the registered Coach trademark. Yet, he testified, the purse was not an authentic Coach purse, because it had plastic handles, which authentic Coach purses do not have. Richissin also testified that a purported Tiffany trademark was not affixed to a piece of jewelry in the proper location to be an authentic Tiffany trademark, and consequently, the mark was counterfeit, as was the jewelry.

**{¶ 27}** Distinguishing such fine details, especially where the counterfeit marks are almost indistinguishable from authentic marks, requires extensive

training and experience of an expert because it is beyond the knowledge of the average juror. In other words, the more substantially indistinguishable the counterfeit trademark is, the more important it is to have the expert explain the differences between authentic goods and counterfeit goods.

{¶ 28} Comparison of a counterfeit mark to an authentic trademark by a layman may be of little value in reaching the ultimate determination whether goods are counterfeit. The majority gives far too much weight to this single factor.

{¶ 29} Thus, I would hold that Richissin's testimony aided the jury in determining whether Troisi engaged in trademark counterfeiting. See *State v. Hartman* (2001), 93 Ohio St.3d 274, 285, 754 N.E.2d 1150.

{¶ 30} The record also contains statements from Troisi admitting that the goods seized were counterfeit. For example, Richissin testified that during his investigation in this case, he attempted to buy a purse from Troisi. The prosecutor asked Richissin the following questions regarding his purchase of the purse from Troisi:

{¶ 31} "Q. Was there any discussion prior to your purchase?

{¶ 32} "A. We tried to get [Troisi] down on the price. We asked her if we could purchase the purse for forty dollars, rather than fifty dollars.

{¶ 33} "Q. And did she have a response for you?

{¶ 34} "A. She said to me, Do you know [how] much it would cost to buy that purse if it was real."

{¶ 35} Moreover, in her statement to police, Troisi stated that she "had copy bags" and knew that "it was error to sell them." She also stated that she "knew that the purses and wallets were not authentic."

{¶ 36} Troisi's admissions regarding her knowledge of the counterfeit nature of the goods is totally ignored by the majority. I believe that Troisi's

testimony, along with the seized goods and Richissin's testimony, establishes her guilt beyond a reasonable doubt.

## Conclusion

**{¶ 37}** Viewing the evidence in a light most favorable to the state, I would find that there is sufficient evidence to support Troisi's conviction for trademark counterfeiting. Accordingly, I would reverse the court of appeals judgment and reinstate the jury's verdict.

O'CONNOR, J., concurs in the foregoing opinion.

_____

**O'CONNOR, J., dissenting.**

**{¶ 38}** I join Justice Lundberg Stratton's dissent but write separately to focus on the fact that the trier of fact, the jury, was in the best position to discern the weight and quality of the state's evidence, including the testimony of the state's expert, Mr. Richissin.

**{¶ 39}** The court of appeals' decision focuses on the state's failure to introduce a certified copy of the trademarks on file with the United States Patent and Trademark Office and concludes that the state's omission is grounds for reversing the jury's verdict. But the focus should remain on the rule that it is the role of the jury, not the appellate court, to determine the weight and credibility of the evidence adduced at trial, including Richissin's testimony that he can identify a counterfeit good by virtue of his training and experience.

**{¶ 40}** The jury's duty is to weigh the credibility of any witness, including an expert. As we stated in *State v. Jamison* (1990), 49 Ohio St.3d 182, 191, 552 N.E.2d 180, "[t]he weight to be given evidence and the credibility of witnesses are jury issues. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. 'It is the minds of the jurors and not the minds of the judges of an appellate court that are to be convinced.' *State v. Petro* (1947), 148 Ohio St. 473, 501, 36 O.O. 152, 163, 76 N.E.2d 355, 369."

**{¶ 41}** Here, the jury was charged on the law and the elements of R.C. 2913.34(A)(4), and it applied that law to the evidence. The jury concluded that the state had proved its case. In light of Troisi's admission that she knew the goods were counterfeit and Richissin's testimony that he learned how to detect counterfeit goods through training provided by the owners of the trademarks and that Troisi's goods were counterfeit, the jury's verdict should be respected. I therefore dissent.

LUNDBERG STRATTON, J., concurs in the foregoing opinion.

_____

Charles E. Coulson, Lake County Prosecuting Attorney, and Teri R. Daniel and Charles F. Cichocki, Assistant Prosecuting Attorneys, for appellant.

Argie, D'Amico & Vitantonio and Dominic J. Vitantonio, for appellee.

_____