JOURNAL ENTRY AND OPINION
{¶ 1} Defendant, Brian Whitlow, appeals his bench trial conviction and sentence for fifth degree felony theft in violation of R.C. 2913.02. The evidence showed that a group of four or five men would enter a Home Depot store separately or in groups of two, get a cart, and wander around the store for an extended period of time. These men would pass each other in the store but would not acknowledge each other. Two of the men would remove from the shelves and place in their shopping carts several DeWalt combo kits,[1] valued at nearly $500 each. They would place a large "For Sale" sign or a coat on top of the kits in the cart. The rest of these men walked in the Garden area, which is an outdoor area enclosed by a tall chain link fence.
 {¶ 2} The men never made purchases when they were in the store. Instead, after an hour or so of wandering up and down the aisles, they would leave empty-handed. Shortly after they left, a store employee would find a hole cut into the fence surrounding the garden center. The shopping carts would be sitting next to the hole in the fence. Although the "For Sale" sign would still be in the cart, the DeWalt combo kits would be missing. Most of the thefts occurred in the winter, when the Garden area had little or no merchandise for sale.
 {¶ 3} After several Home Depot stores experienced these thefts, loss prevention began watching for men behaving in a manner consistent with the thieves. From reviewing video surveillance tapes and reports from various Home Depot stores, the loss prevention officers began to focus on the suspects in this case. As the loss prevention supervisor testified, the Home Depot Store in northeastern Ohio had all been alerted that four or five white males were involved in stealing DeWalt Combo Kits at various stores. The loss prevention officers shared descriptions and video surveillance of the suspects. After identifying the suspects they saw on the surveillance videos by reviewing mug shots, the loss prevention officers printed information about them from the Department of Corrections.
 {¶ 4} In the course of his investigation of these thefts, one of the supervisory officers who oversaw the actions of the different loss prevention officers assigned to the individual stores reviewed the photos and the Department of Correction offender data sheets of each of the suspects. He then observed the defendant and his co-defendants inside the Euclid Home Depot behaving in a manner consistent with the previous thefts of the DeWalt kits.
 {¶ 5} On January 20th and 21st, the individual loss prevention officer assigned to the Highland Heights Home Depot was watching the security cameras when he noticed a man, later identified as one of the co-defendants, put a DeWalt kit into his cart. He also saw a second man, another co-defendant in this case, pass the first co-defendant without speaking. The second man also put a DeWalt kit into his cart and covered it with a large "For Sale" sign.
 {¶ 6} After observing this suspicious behavior, the loss prevention officer asked other store personnel to follow these men through the store and monitor them. For up to an hour and a half, they followed the men, as well as another man who took one of the carts from one of the first two men. At one point the loss prevention officer lost sight of the men but soon after saw them leaving the store without buying anything. He found a hole in the fence with the shopping cart near it. The cart contained the "For Sale" sign but no DeWalt kits.
 {¶ 7} The loss prevention officer proceeded to another Home Depot store to print the photos from the surveillance camera from that day. When he returned to the Highland Heights Home Depot, he again saw two of the co-defendants, as well as the defendant in the case at bar, walking in the store. When these men saw him, they quickly left the store.
 {¶ 8} Two of the men were seen walking across the parking lot to a Denny's restaurant, and the other two, who included our defendant, got into a purple Grand Am and drove away. The store manager took down the license plate of the Grand Am. The loss prevention officer then called the police and relayed the information about the vehicle.
 {¶ 9} Employees of Home Depot led the police to the co-defendants at the Denny's restaurant nearby. The police arrested the two co-defendants whom the employees identified and took one of them back to the store, where additional employees identified him.[2] Another policeman stopped the Grand Am and arrested defendant and another co-defendant in the car. They were also taken to Home Depot and identified by employees there.
 {¶ 10} Defendant was tried in a joint bench trial with three of the co-defendants. A fifth co-defendant's trial was scheduled separately. Acquitted on the possession of criminal tools charge, the men were convicted of the fifth-degree felony theft.[3]
Defendant timely appealed, stating five assignments of error, of which the first is:
I. The state failed to present sufficient evidence to establish beyond a reasonable doubt the elements necessary to support a conviction for theft under R.C. 2913.02.
 {¶ 11} Defendant claims that the evidence was insufficient to show that he was a part of the scheme the theft ring was pursuing. To decide whether sufficient evidence exists to support a conviction, the court looks at whether the evidence which supports the state's case, if accepted as true, would support a conviction. When a court reviews a "claim of insufficient evidence, the test is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence." State v. Martin (1983), 20 Ohio App.3d 172, 175. Sufficiency is a question of law. State v. Thompkins (1997),78 Ohio St.3d 380, 386.
 {¶ 12} Defendant argues that he had just been released from prison in early January, sixteen days before his arrest, and that the thefts of DeWalt kits from Home Depot had been going on since August, with the largest thefts taking place in December. He also points out that he was never seen with any of the missing merchandise but was observed only walking around the store without buying anything.
 {¶ 13} Although the evidence against defendant is circumstantial, "[c]ircumstantial evidence and direct evidence inherently possess the same probative value. In some instances certain facts can only be established by circumstantial evidence." State v. Jenks (1991), 58 Ohio St.3d 259, 272.
 {¶ 14} Home Depot had been investigating this theft ring for some time. A loss prevention supervisor testified to seeing defendant and his co-defendants behaving in the same manner in the Euclid Home Depot on January 20th. Witnesses saw defendant following this same modus operandi at the Highland Heights Home Depot on the 20th and the 21st. He was in the company of another one of the co-defendants, and, in fact, drove away with that co-defendant immediately after they were approached on the 21st by an employee in the Highland Heights Home Depot, where the theft had occurred.[4]
 {¶ 15} Defendant's presence at the same time the other three co-defendants were present and in the company of one of the co-defendants, three different times at Home Depots in a two-day period, along with the fact that all the defendants behaved consistent with the modus operandi of the previous thefts, provides sufficient circumstantial evidence, if believed, to support a conviction. This assignment of error, therefore, is overruled.
 {¶ 16} For his second assignment of error, defendant states:
II. Appellant's conviction is against the manifest weight of the evidence.
 {¶ 17} Even if sufficient evidence exists to support his conviction, defendant argues, the manifest weight of the evidence is against it.
 {¶ 18} Manifest weight and sufficiency employ different standards of review. Whereas sufficiency is a question of law, manifest weight addresses the value of the evidence in supporting the conviction. The appellate court reviews the evidence and decides whether the greater amount of credible evidence weighs against the conviction. State v. Thompkins (1997),78 Ohio St.3d 380, 387.
The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. See Tibbs v.Florida (1982), 457 U.S. 31, 38, 42; United States v. Lincoln,
supra, at 1319; Dorman v. State, supra, at 454; State v.Robinson, supra; State v. Petro (1947), 148 Ohio St. 473
[36 O.O. 152]; Wright, supra, at Section 553.
State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 19} The evidence before the court consisted of eyewitness accounts placing defendant, on three separate occasions, inside a Home Depot in the company of one of the co-defendants when the other two co-defendants were also present in the store. The evidence also shows that although defendant spent considerable time inside the store, he never purchased anything. A few days before his arrest, the assistant manager of the store specifically observed defendant walking for approximately twenty minutes in the store with a DeWalt kit in a cart covered over by a "For Sale" sign.
 {¶ 20} A supervisor and the assistant manager both testified that they saw defendant leaving the Garden area of the store. Although this area of the store was open, it contains little or no merchandise during the winter months after Christmas. After defendant left the garden area, store employees found a hole in the fence.
 {¶ 21} In addition to this circumstantial evidence, the manager of the hardware area of the store gave the police a report on January 21st that he saw defendant and a co-defendant cutting the fence. At the time of trial, the manager had no independent recollection, however, of what he had earlier reported. He also stated in the report that defendant went to Denny's restaurant, not that defendant took off and drove away in the purple Grand Am. After stopping the Grand Am and arresting defendant, the police took him back to Home Depot, where several employees identified him. Although the evidence against defendant is almost all circumstantial, it is substantial.
 {¶ 22} On the other hand, one of the store employees who had identified defendant — after defendant was brought back to the store directly from the Grand Am — testified at trial that defendant had gone to Denny's and that he had identified him there. Additionally, another employee, when viewing the photo array, was not able to decide between defendant and another man. Other store employees also could not identify defendant.
 {¶ 23} Another factor weighing against conviction, defendant argues, is the fact that Home Depot could not state with certainty the exact number of DeWalt kits that were missing. Although the manager in charge of inventory tried to explain the system, neither the court nor the defense attorneys could make sense of his explanation.
 {¶ 24} Although there is evidence which would not support the conviction, there is no evidence to contradict the numerous store employee eye witness identifications of defendant or to contradict defendant's presence in the store in the company of a co-defendant at the same time the other co-defendants were all engaging in the same actions as in the other thefts. The manifest weight of the evidence, therefore, supports defendant's conviction. Accordingly, this assignment of error is overruled.
 {¶ 25} For his third assignment of error, defendant states:
III. The trial court erred by allowing the state to introduce other acts evidence contrary to Evid.R. 404(B) which resulted in unfair prejudice to appellant.
 {¶ 26} Defendant claims he was prejudiced by the testimony of the loss prevention supervisor that defendant had been seen in the Euclid Home Depot at the same time as the co-defendants on the 20th while they were acting in a manner consistent with the modus operandi of the crimes. He argues that because the indictment specified thefts which occurred only at the Highland Heights Home Depot, testimony about the Euclid store is not relevant and was unduly prejudicial. He cites to Evid.R. 404(B) which states:
B) Other crimes, wrongs or acts. — Evidence of the other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
Evid.R. 404(B). Also relevant to this argument is R.C. 2945.59, which states:
In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.
R.C. 2945.59.
 {¶ 27} The state argues that the loss prevention officer's testimony was admissible because it demonstrated the scheme and system defendant and his co-defendants used in committing their thefts. We agree. "`Other acts forming a unique, identifiable plan of criminal activity are admissible to establish identity under Evid.R. 404(B).'" State v. Lowe (1994),69 Ohio St.3d 527, 531, quoting State v. Jamison (1990), 49 Ohio St.3d 182, syllabus.
 {¶ 28} In the case at bar, the actions of defendant and his co-defendants were consistent with the scheme and system. In committing the other thefts, they used a unique and identifiable plan. This information was admissible because it showed the scheme or system defendant used in committing his crime. Accordingly, this assignment of error is overruled.
 {¶ 29} For his fourth assignment of error, defendant states:
IV. Appellant's sixth amendment right to confront witnesses against him was violated when police officers were permitted to present hearsay testimony of alleged oral statements made by co-defendants that implicated defendant.
 {¶ 30} During this joint trial of four co-defendants, the court allowed testimony from the police concerning statements made by two co-defendants which referenced our defendant. Defendant now argues that he was prejudiced because he did not have the opportunity to cross-examine the co-defendants who made those statements to the police.
 {¶ 31} The United States Supreme Court has held that, to protect a defendant's right to confrontation, courts must "exclude accomplice confessions where the defendant had no opportunity to cross-examine." Crawford v. Washington (2004),541 U.S. 36, 57. This rule also applies in state court; "the right of cross-examination secured by the Confrontation Clause of the Sixth Amendment is made applicable to the States by the Fourteenth Amendment." Roberts v. Russell, 392 U.S. 293, 294, citing Pointer v. Texas, 380 U.S. 400; Douglas v. Alabama,380 U.S. 415.
 {¶ 32} The purpose of this restriction is to prevent jurors from impermissibly applying facts contained in the co-defendant's confession against defendant.
Despite the cautionary instruction, the admission of a defendant's confession which implicates a codefendant [sic] results in such a "serious flaw." * * * [T]he error "[goes] to the basis of fair hearing and trial because the procedural apparatus never assured the [petitioner] a fair determination" of his guilt or innocence. Linkletter v. Walker, supra, at 639, n. 20. As we said in Bruton:
"There are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. * * * Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant [sic] * * * are deliberately spread before the jury in a joint trial." 391 U.S., at 135-136.
Roberts at 294-295.
 {¶ 33} The admission, therefore, of a co-defendant's statement without the opportunity to cross-examine violated the Confrontation Clause of the Sixth Amendment. Bruton v. UnitedStates (1968), 391 U.S. 123, 126.
 {¶ 34} Statements made in response to police questioning are included in those statements which deprive a defendant of his right to confrontation, if there was no opportunity to cross-examine. "When the hearsay is `testimonial' in nature — i.e., the result of official examination — the [U.S. Supreme] Court [in Crawford v. Washington (2004), 541 U.S. 36] held that such hearsay is inadmissible, regardless of its reliability and regardless of the declarant's unavailability, unless the defendant has had a prior opportunity to cross-examine." Statev. Nix, Hamilton App. No. C-030696, 2004-Ohio-5502 ¶ 73. The United States Supreme Court has ruled that statements made during police interrogations are testimonial evidence. Crawford v.Washington (2004), 541 U.S. 36, 53.
 {¶ 35} Because the challenged statements were both from police interrogations, they fall under the Bruton rule. "Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation."Crawford at 54.
 {¶ 36} To be a basis for reversal error, however, the admission of the testimony must have been so prejudicial as to have affected the outcome of the case. The Ohio supreme Court explained:
Our conclusion that appellant was implicated in these two instances contrary to his right of confrontation does not, however, mean that his conviction is to be automatically reversed. The line of cases following Bruton have firmly established that an error of this sort may be harmless. InSchneble v. Florida (1972), 405 U.S. 427, 430, the Supreme Court declared:
"The mere finding of a violation of the Bruton rule in the course of the trial, however, does not automatically require reversal of the ensuing criminal conviction. In some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the codefendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error." See, also, Harrington v. California (1969), 395 U.S. 250;Parker v. Randolph (1979), 442 U.S. 62, 60 L. Ed.2d 713; andElliot v. Thompson (C.A. 6, 1979), 599 F. 2d 767, certiorari denied 62 L.Ed.2d 190.
State v. Moritz (1980), 63 Ohio St.2d 150, 156-157.
 {¶ 37} The case at bar was tried to the bench. The Ohio Supreme Court has noted that when a judge hears evidence "in a bench trial, the court must be presumed to have `considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary.'"State v. Richey (1992), 64 Ohio St.3d 353, 357-358, quoting State v. Post (1987), 32 Ohio St.3d 380, 384, 513 N.E.2d 754,759.
 {¶ 38} In the first challenged statement, the co-defendant who was arrested in the Grand Am stated that he had been in the company of defendant, but he does not implicate him in any of the thefts. He merely places him in the co-defendant's company. This evidence was already before the court from the testimony of the officer who made the traffic stop of the two men in the Grand Am.
 {¶ 39} In the other challenged statement, another co-defendant stated at the police station that they had better not place him near defendant or there would be trouble. He then said that defendant and another co-defendant "were thieves and drug addicts, and that they didn't get along." Both these statements indicate that defendant was an acquaintance of the co-defendant and brand him as a thief, but they do not specifically implicate him in the specific thefts before the court.
 {¶ 40} Further, the court expressly disregarded any statements made by defendant's co-defendants. Repeatedly throughout the trial the court stated that it would not use statements by any co-defendant except to determine the guilt of the speaker. The Bruton risk of influencing a jury, therefore, was significantly less in this bench trial.
 {¶ 41} Finally, when issuing its judgment on the defendant in the case at bar, the court delineated its reasons for the conviction. It stated that its verdict was based on the employees' identification of defendant when he was brought back to the Home Depot immediately after his arrest on January 21st and the loss prevention officer's identification of him as being in the store on January 20th. Defendant's presence there at the same time as the other defendants, along with his actions, which were consistent with the scheme of theft of the DeWalt kits, determined his guilt, not any statements by his co-defendants to the police. Although the co-defendants' statements were improperly admitted and violated Bruton, their introduction was harmless error because defendant would have been convicted without them. We must take note that the court studiously omitted them in its consideration of defendant's guilt. Accordingly, this assignment of error is without merit.
 {¶ 42} For his fifth assignment of error, defendant states:
V. The trial court erred by imposing the maximum prison sentence for a fifth degree felony contrary to law and in violation of appellant's sixth amendment right to have sentence enhancing facts determined by a jury.
 {¶ 43} Defendant argues that the trial court erred by imposing the maximum prison sentence on him.[5] The imposition of the maximum sentence is governed by R.C. 2929.14(C) and R.C. 2929.19. R.C. 2929.14(C)requires certain findings:
Except as provided in division (G) of this section or in Chapter 2925. of the Revised Code, the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood ofcommitting future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section. (Emphasis added.)
 {¶ 44} It is well-settled that the findings in R.C.2929.14(C) are in the alternative. The court need make only one of the four findings. State v. Satterwhite, Franklin App. No. 04AP-965, 2005-Ohio-2823; State v. McIntosh (2005),160 Ohio App.3d 544 ¶ 10. In addition to the findings required, R.C.2929.19(B)(2)(d) also requires the court to give reasons
[i]f the sentence is for one offense and it imposes a prison term for the offense that is the maximum prison term allowed for that offense by division (A) of section 2929.14 of the Revised Code * * *.
 {¶ 45} The trial court must, therefore, make one of the statutory findings and give reasons for those findings if it imposes the maximum sentence for a crime. In the case at bar, the court found that defendant posed the greatest likelihood of committing future crimes when it pointed out that defendant had been to prison twice for theft offenses and had four known prior theft offenses. The court then said:
Another thing that kind of interests me here is that he is going to be 35 years old in July. He was, I guess, 33 or 34 when he committed this offense. And he is still committing crimes at an age when most of the people get tired of this and get out of this business. And he is committing theft offenses.
Tr. at 1038. The court later stated that it
* * * just can't get over the fact that at age 34, 17 days after he gets, or 16 he says, after he gets out of the penitentiary he is back stealing and is involved in major activity here. * * *
I don't know why you are doing this, but, as far as I am concerned, it was clear from the evidence that you were all participating in this together. And that you haven't learned, at age 34, to stop doing this stuff.
So with your criminal record, frankly, I come to the conclusion that you have the greatest likelihood of committing further crimes. I don't see you stopping at this point.
So I am going to give you the maximum sentence * * *.
Tr. at 1047-1048.
 {¶ 46} The court clearly stated its finding, that defendant posed the greatest likelihood of committing future crimes. It also aligned its finding with its reason for the finding, that defendant had an extensive record of theft offenses and had continued to pursue his life of crime immediately upon being released from prison. The court made the necessary finding and aligned its reason for that finding in compliance with the statutes.
 {¶ 47} Defendant also argues that his maximum sentence is unconstitutional under the U.S. Supreme Court's decision inBlakely v. Washington, (2004), ___ U.S. ___, 124 S.Ct. 2531, 159 L.Ed.3d 403. This argument was recently addressed in this court's en banc decision of State v. Lett, (May 31, 2005), Cuyahoga App. Nos. 84707 and 84729. In Lett, this court held that R.C. 2929.14(C), which governs the imposition of maximum sentences, does not implicate the Sixth Amendment as construed inBlakely. In conformity with that opinion, therefore we reject defendant's argument and overrule Assignment of Error V.[6]
 {¶ 48} Accordingly, this assignment of error lacks merit. Affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, P.J., concurs.
Corrigan, J., concurs in Judgment only.
[1] Home Depot loss prevention officer, Larry Gleba, explained a DeWalt Combo kit is: "a three-piece kit, they run on 14 volt, 18 volt. A lot of times they contain a drill, a cordless drill, maybe a little hand vacuum cleaner, flashlight. It depends what they want to put in it. It's a three-piece." Tr. at 95.
[2] The other co-defendant was taken directly to the police station.
[3] The court reduced the degree of the felony theft from fourth, as listed in the indictment, to fifth. The court ruled that the state had not proved that defendants were guilty of a fourth degree felony because it had failed to establish the value above a certain amount of all the DeWalt Kits the men stole. Tr. at 1012-1014.
[4] A store employee testified that he saw defendant in the store with a cart containing a Dewalt kit and a "For Sale" sign on January 18th.
[5] Defendant was sentenced to twelve months, the maximum sentence for a fifth degree felony. The trial court denied defendant's motion to stay his sentence until his appeal was heard. He has, therefore, already served his sentence.
[6] I separately note, however, that because I believe the en banc procedure this court used in Lett is unconstitutional and dissented for that reason, as well as on the merits, I reluctantly follow this court's decision and await a ruling from the Ohio Supreme Court.