DECISION AND JOURNAL ENTRY
{¶ 1} Defendant, Denny Ross, appeals from the judgment of the Summit County Court of Common Pleas, which sentenced him to twenty-five years incarceration and adjudicated him as a sexual predator. We affirm in part and reverse in part.
 {¶ 2} Defendant was indicted on June 28, 2004, and a supplemental indictment was filed on August 28, 2004. Defendant was charged with one count Attempted Murder, in violation of R.C. 2903.02(A)/2903.02, a felony of the first degree; one count Kidnapping, a violation of R.C. 2905.01(A)(3)/(4), a felony of the first degree; one count of Rape, in violation of R.C. 2907.02(A)(2), a felony of the first degree; one count Felonious Assault, in violation of R.C. 2903.11(A)(1), a felony of the second degree; one count Intimidation of Crime Victim or Witness, in violation of R.C. 2921.04(B)(3), a felony of the third degree; one count Petty Theft, in violation of R.C. 2913.02(A)(1), a misdemeanor of the first degree. The supplemental indictment charged Defendant with one count Kidnapping, in violation of R.C. 2905.01(A)(2), a felony of the first degree; one count Kidnapping, in violation of R.C. 2905.01(A)(4), a felony of the first degree; one count Aggravated Robbery, in violation of R.C. 2911.01(A)(1), a felony of the first degree; and one count Felonious Assault, in violation of R.C. 2903.11(A)(2), a felony of the second degree. Defendant pled not guilty to all the charges and the case proceeded to a jury trial on October 25, 2004. At the close of the State's case, at Defendant's request, the trial court dismissed the charges of kidnapping and petty theft from the initial indictment, as well as the first charge of kidnapping (R.C. 2905.01(A)(2)) from the supplemental indictment.
 {¶ 3} Defendant's indictment stemmed from an incident that occurred in the early morning hours of June 16, 2004. The victim J.T., testified that the following events occurred. J.T. had a fight with her boyfriend, Jason Larue, and she decided to go out to a bar as a result. At the bar, she began a conversation with Defendant and two people who were with Defendant, Dannie Yeager and Karri Labut. The evening began with the foursome drinking together at the Station House 319 bar. The four then decided to leave to shoot pool at another bar. The four stayed at the second bar, Rumors, for a period of time and then returned to Station House 319 to purchase beer. Following the beer purchase, the four went to J.T.'s home. The four remained at J.T.'s home until approximately 2:00 a.m.
 {¶ 4} At roughly 2:00 a.m., Mr. Yeager and Ms. Labut left J.T.'s residence. Defendant, however, remained at the home. J.T. testified that upon reentering the house from watching the others leave, Defendant attacked and raped her. As a result of the brutal attack, J.T. suffered multiple injuries including a laceration to her face and a broken jaw. At trial, J.T. testified that she believed that the laceration was caused by a knife during the attack. In addition, J.T. testified that she was choked while Defendant raped her. She went on to state that following the attack, Defendant took a picture of her children from her house, threatening to kill them if she called the police. Based upon these facts, Defendant was indicted and brought to trial.
 {¶ 5} Following a jury trial, Defendant was found guilty of attempted murder, rape, felonious assault, intimidation of a crime victim or witness from the initial indictment, and guilty of kidnapping and felonious assault from the supplemental indictment. Defendant was found not guilty of aggravated robbery.
 {¶ 6} Defendant was sentenced to incarceration for the following periods: eight years for attempted murder, eight years for kidnapping, eight years for each of the two felonious assault convictions, and one year for intimidation. The convictions for kidnapping and rape were merged, and the two felonious assault sentences were ordered to run concurrently. All of the remaining sentences were ordered to run consecutively, which totaled a 25-year term of incarceration. At his sentencing hearing, the trial court sentenced adjudicated Defendant a sexual predator, pursuant to R.C. 2950.09(B)(2).
 {¶ 7} However, the trial court failed to impose post-release control at Defendant's initial sentencing hearing. Following his notice of appeal, the trial court resentenced Defendant to inform him of his post-release control. Defendant appealed from both his original sentencing and his resentencing, asserting twelve assignments of error for our review. To facilitate analysis, we have rearranged Defendant's assignments of error and will address multiple assignments of error together.
 ASSIGNMENT OF ERROR I
"All of the convictions returned against [Defendant] must be reversed because extensive pretrial publicity resulted in a violation of his impartial jury rights under the Due Process Clause of the Fourteenth Amendment to the [U.S. Constitution] and Article 1, § 10 of the Ohio Constitution."
 {¶ 8} In his first assignment of error, Defendant contends that the media coverage of this trial and his previous murder trial was so extensive that the trial court should have presumed prejudice and granted his motion for a change of venue. This Court disagrees.
 {¶ 9} Courts rarely presume prejudice based upon pretrial publicity.State v. Lundgren (1995), 73 Ohio St.3d 474, 479. Based upon the record before this Court, we cannot say that such a case is presented here.
 {¶ 10} A reviewing court cannot permit anything to be added to the record that was not part of the trial court's proceedings, and then use the added matter to decide the appeal. State v. Hill (2001),90 Ohio St.3d 571, 573. "Since a reviewing court can only reverse the judgment of a trial court if it finds error in the proceedings of such court, it follows that a reviewing court should be limited to what transpired in the trial court as reflected by the record made of the proceedings." State v. Ishmail (1978), 54 Ohio St. 2d 402, 405-406.
 {¶ 11} In the instant matter, none of the alleged pretrial publicity is contained in the record. Unlike the defendant in Lundgren, Defendant did not file any of the alleged inflammatory media articles with the trial court. Lundgren, 73 Ohio St.3d at 478. While this Court acknowledges that a crime such as this no doubt generated a response from the media, we cannot look outside the record to determine the extent of that response. Ishmail, 54 Ohio St.2d at 405-406. As a result, the only evidence contained in the record before this Court consists of survey results regarding the public at large. In that survey, nearly 67% of the respondents indicated that they had reached no opinion regarding Defendant's guilt or innocence.
 {¶ 12} In addition, the trial court conducted an extensive voir dire before seating a jury. Defendant's counsel was given wide latitude to question the jurors. Every juror that was seated stated unequivocally that, despite any knowledge of media reports, they could make an impartial judgment based solely upon the evidence presented. Accordingly, we cannot say that the trial court abused its discretion in denying Defendant's motion for a change of venue. Lundgren,73 Ohio St.3d at 479-480. Defendant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR VI
"Each of the convictions against [Defendant] must be reversed because each is against the manifest weight of the evidence."
 {¶ 13} In his sixth assignment of error, Defendant asserts that each of his convictions is against the manifest weight of the evidence. Specifically, he claims that the relevant evidence against him does not support his convictions for attempted murder, rape, felonious assault, and intimidation of crime victim or witness. We disagree.
 {¶ 14} When a defendant maintains that his conviction is against the manifest weight of the evidence,
"[A]n appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier or fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 15} This court may only invoke the power to reverse based on manifest weight in extraordinary circumstances where the evidence presented at trial weighs heavily in favor of a defendant. Id. Absent extreme circumstances, an appellate court will not second-guess determinations of weight and credibility. Sykes Constr. Co. v. Martell
(Jan. 8, 1992), 9th Dist. Nos. 15034 and 15038, at 5-6.
 {¶ 16} Upon a careful review of the record, this Court cannot conclude that the jury lost its way and created a manifest miscarriage of justice when it found Defendant guilty of attempted murder, rape, felonious assault, and intimidation of crime victim or witness. See Otten,33 Ohio App.3d at 340.
 {¶ 17} To facilitate analysis, we will first address Defendant's attempted murder conviction and then his remaining convictions.
 {¶ 18} Attempt is defined by R.C. 2923.02(A) as follows:
"No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."
R.C. 2903.02 provides that "No person shall purposely cause the death of another [.]" With respect to his attempted murder conviction, Defendant urges that the State failed to demonstrate that he had the intent required under the statute to be convicted. This Court disagrees.
 {¶ 19} In order to convict a defendant for attempted murder, the State is required to prove that the defendant has a specific intent to kill at the time of the offense. State v. Widner (1982), 69 Ohio St.2d 267,268-269. Because a defendant's mental state is difficult to demonstrate with direct proof, it may be "inferred from the surrounding circumstances." State v. Logan (1979), 60 Ohio St.2d 126, 131. In this matter, Defendant urges that since the he could have killed the victim, but chose not to, he clearly never intended to kill her. Defendant further asserts that his subsequent threat to kill the victim demonstrates that he never intended to kill her. We find that both of Defendant's contentions lack merit.
 {¶ 20} J.T. testified that Defendant choked her and that she believed that she lost consciousness on several occasions as a result of the choking and the severe beating she received. We find that from the facts that the jury could reasonably infer that J.T.'s lapses into unconsciousness eliminated Defendant's desire to kill her. Prior to the assault, Defendant warned J.T. that he would kill her if she fought back. Once the victim began to lose consciousness, Defendant could successfully complete the crime that he desired, rape, without killing J.T.
 {¶ 21} Further, Defendant has offered no authority for his position that he could not have changed his mind during the course of the attack, unless the victim had successfully fought him. Once Defendant realized that he had successfully beaten J.T. into submission, he no longer had to follow through with his prior threat. However, that does not mean that Defendant did not take a substantial step in a course of conduct planned to culminate in murder. See State v. Group, 98 Ohio St.3d 248,2002-Ohio-7247, at ¶ 95. Defendant choked J.T. until she was unconscious. That fact alone presents substantial evidence from which a jury could reasonably infer that Defendant intended to kill J.T. if he could not successfully rape her.
 {¶ 22} In addition to his challenge to specific intent, Defendant also contends that no reasonable jury could have believed the testimony of J.T. Specifically, Defendant recounts the numerous inconsistencies in J.T.'s testimony and prior statements and urges that J.T.'s testimony is inconsistent with the evidence presented. Defendant has also maintained that his remaining convictions are against the manifest weight of the evidence under the same rationale. This Court disagrees.
 {¶ 23} There is no question from the record that J.T. made numerous inconsistent statements to the officers who investigated the crimes that occurred on the night in question. However, there is also no question that each of these inconsistencies was presented to the jury on numerous occasions. The jury was aware that J.T. had stated that the rape occurred in her driveway and later stated that it occurred inside. Further, the jury was aware that J.T. once stated that she was followed home without being asked and later stated that she had given permission to Mr. Yeager, Ms. Labut, and Defendant to come to her home.
 {¶ 24} However, there were certain critical details about which J.T. never wavered. J.T.'s identification of Defendant as her attacker was never challenged. Upon seeing Defendant's picture, she stated that she was 100% certain that he was her attacker and that she would stake her children's lives on it. In addition, J.T. has always maintained that Defendant cut her with a knife during the attack, choked her during the attack, penetrated her with his penis during the attack, and threatened to kill her and her children following the attack.
 {¶ 25} Further, Defendant's claim that the physical evidence does not support J.T.'s testimony lacks merit. First, neither expert could rule out that a forcible rape had occurred. Defendant's expert, Dr. Cyril Wecht, testified that it would be very unusual for a rape to occur and no trauma be inflicted on the victim's genitalia. However, he could not rule out such a possibility. On cross-examination, Dr. Wecht indicated that the trauma to the genital area could be reduced if the victim was unconscious or had stopped resisting during the sexual act. Further, J.T. herself did not describe a violent rape. She testified that she felt Defendant "bumping against [her]" while he was choking her. In addition, the State introduced evidence that Defendant's semen was recovered from both J.T's vaginal and anal areas.
 {¶ 26} In addition, neither expert could rule out that a knife had caused the cut on J.T.'s face. Dr. Wecht testified that he believed that the wound was consistent with blunt force trauma. Again, however, he could not rule out that the wound was caused by a knife. The State's witness, Dr. Listerman, testified that he believed that the cut was consistent with being caused by a sharp object, such as a knife. He went on to testify that in his experience, wounds caused by falls tended to be more jagged, while the wound J.T. suffered was smooth. Dr. Listerman also testified that the injuries to J.T.'s neck were consistent with her statement that she had been choked during the attack.
 {¶ 27} Accordingly, contrary to Defendant's assertions, the physical evidence is consistent with the testimony given by J.T. Further, our review of the record indicates that it is Defendant's proposed factual scenario that lacks evidentiary support.
 {¶ 28} We begin by noting that based upon the DNA evidence, Defendant cannot contend that he did not have sex with J.T. Further, J.T., Mr. Yeager, Ms. Labut, and Defendant returned to J.T.'s home at approximately 1:30 a.m. Ms. Labut and Mr. Yeager then went upstairs to the bathroom and spent fifteen to thirty minutes alone in the bathroom. In addition, Defendant and Mr. Yeager spent fifteen minutes installing an air conditioner at J.T.'s residence. At some point thereafter, Mr. Yeager and Ms. Labut left the resident and Defendant remained with J.T. Even under the most favorable view of the evidence for the Defendant, Mr. Yeager and Ms. Labut left J.T.'s house shortly after 2 a.m.
 {¶ 29} Accordingly, the only plausible theory of Defendant's innocence would necessitate a finding that the following acts occurred. After the others left, J.T. and Defendant engaged in consensual sex. Defendant then left the residence. Then, prior to 2:56 a.m., another person entered J.T.'s house and assaulted, beat, and choked her. This assault would have had to have occurred between 2:00 a.m. and 2:56 a.m. because J.T. called her boyfriend at that time to inform him that she had been raped and beaten. In addition, this second attacker would have to have committed a nearly flawless crime, leaving behind no physical evidence to indicate that he had been in the home. As such a scenario is entirely unsupported by the testimony and physical evidence presented at trial, this Court is not inclined to indulge in such a theory.
 {¶ 30} J.T.'s testimony was supported by the physical evidence and the jury chose to believe her. State v. Merryman, 9th Dist. No. 02CA008109, 2003-Ohio-4528, at ¶ 28. See also, State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. Defendant's convictions, therefore, are not against the manifest weight of the evidence. Defendant's sixth assignment of error is overruled.
 ASSIGNMENT OF ERROR II
"The conviction of attempted murder returned against [Defendant] must be vacated with prejudice because the evidence submitted at trial was constitutionally inadequate to sustain a finding of guilt. [Defendant] is therefore entitled to relief under the Due Process Clause of the Fourteenth Amendment to the [U.S. Constitution] and Article 1, § 10 of the Ohio Constitution."
 {¶ 31} In his second assignment of error, Defendant contends that the State produced insufficient evidence to support his conviction for attempted murder. This Court disagrees.
 {¶ 32} We note that
"[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v.Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4.
As this Court found that Defendant's attempted murder conviction was not against the manifest weight of the evidence, his claim of sufficiency lacks merit. Defendant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR III
"The conviction of attempted murder must be reversed because the State of Ohio knowingly, deliberately and unlawfully deprived [Defendant] of a meaningful opportunity to meet the State's case against him by concealing the specific allegation of strangulation made by the complaining witness until she testified on direct examination. [Defendant] is therefore entitled to relief under the Due Process Clause of the Fourteenth Amendment to the [U.S. Constitution] and Article 1, § 10 of the Ohio Constitution."
 {¶ 33} In his third assignment of error, Defendant contends that the State violated his constitutional rights by failing to inform him that his attempted murder charge stemmed from an allegation that he had choked J.T. This Court disagrees.
 {¶ 34} Defendant urges that State v. Petro (1947), 148 Ohio St. 473, compels reversal in the instant matter. In Petro, the Court held that
"[a] prosecuting attorney is not required to disclose the state's evidence through a bill of particulars, but is required to state specifically the nature of the offense charged, including the manner in which or the means by which the death was caused, where the indictment charges murder in the first degree". Id. at paragraph four of the syllabus.
However, in the instant matter, Defendant was not charged with murder in the first degree. Further, Defendant was given open file discovery throughout the proceedings below. "Thus, the defense could know as much about the case as the state." State v. Justice (June 3, 1987), 9th Dist. No. 12835, at 13. Accordingly, a bill of particulars was not necessary. Id.
 {¶ 35} Additionally, this Court cannot find prejudice resulting from the alleged insufficient bill of particulars. It is undisputed that Defendant had access prior to trial to the medical records of J.T. It is further undisputed that J.T.'s medical records demonstrate trauma to her neck. Defendant forwarded these records on to his medical expert prior to trial. In addition, the State informed the jury during opening statements that Defendant had strangled J.T. The Defendant made no objection to this statement and did not move for a continuance to further investigate these allegations. In addition, J.T. testified numerous times that Defendant had choked her during the attack. Again, Defendant did not object to this testimony on the basis of unfair surprise.
 {¶ 36} As a result, we find that it is doubtful that Defendant properly preserved the instant issue for appellate review. Defendant requested and received a bill of particulars from the State. Upon receipt of the bill of particulars, Defendant determined that it was inadequate in several respects. To remedy this alleged defect, Defendant asked for a "meaningful" bill of particulars. In this motion, Defendant failed to even mention the attempted murder charge.
 {¶ 37} As the State's open file discovery placed Defendant on notice that J.T.'s neck had been injured during the attack, and the State laid out its theory of attempted murder in its opening statement without objection, we cannot say that Defendant's constitutional rights were violated as a result of an alleged insufficient bill of particulars. Defendant's third assignment of error is overruled.
 ASSIGNMENT OF ERROR IV
"All of the convictions returned against [Defendant] must be reversed because of the failure of the State to disclose J.T.'s grand jury testimony and the refusal of the trial court to permit inspection of her grand jury testimony violated the requirements of the Due Process Clause of the Fourteenth Amendment to the [U.S. Constitution] and Article 1, § 10
of the Ohio Constitution."
 ASSIGNMENT OF ERROR V
"Even if the refusal of the trial court to permit inspection of the grand jury materials did not rise to the level of a constitutional violation, the denial of access to grand jury testimony was an abuse of discretion requiring reversal."
 {¶ 38} In his fourth and fifth assignments of error, Defendant asserts that his convictions must be reversed because the State failed to disclose certain elements of a witness' grand jury testimony, which amounted to a violation of his right to due process. In the alternative, Defendant alleges that the trial court committed an abuse of discretion in refusing to allow him inspection of grand jury materials. We disagree.
 {¶ 39} We begin by noting that
"Grand jury proceedings are secret, and an accused is not entitled to inspect grand jury transcripts either before or during trial unless the ends of justice require it and there is a showing by the defense that a particularized need for disclosure exists which outweighs the need for secrecy." State v. Greer (1981), 66 Ohio St.2d 139, paragraph two of the syllabus.
Defendant, however, urges that the trial court was obligated to release the transcripts in the instant matter because of the admitted inconsistencies in J.T.'s statements to investigators. In support, Defendant relies upon State v. White (1968), 15 Ohio St.2d 146. This Court finds Defendant's reliance on White misplaced.
 {¶ 40} Defendant's assertion that disclosure of the transcripts in this case should have been automatic pursuant to White is erroneous.
"The rule announced in the fourth and fifth paragraphs of the syllabus of White is not applicable to appellant's pre-trial motion for production of the grand jury transcript. The White rule contemplates a limited investigation for the purpose of determining whether inconsistencies exist between a witness' prior statements and his testimony at trial. Such investigation can be made only after the witness testified at trial, and, generally, can not be used by an accused for ascertaining the evidence of the prosecution for the purpose of trial preparation. It is a discovery device only for the purposes of impeachment upon cross-examination." State v. Laskey (1970), 21 Ohio St.2d 187, 191, vacated on other grounds (1972), 408 U.S. 936, 33 L.Ed.2d 753.
 {¶ 41} Our review of the record indicates that Defendant filed his motion for grand jury transcripts on August 17, 2004, and captioned the motion "Defendant's Motion for a Pretrial Copy of the Transcript of the Grand Jury Proceedings." (Emphasis added.) Defendant did not limit this motion in any manner. That is, he requested the entire transcript of the grand jury proceedings, arguing that the witnesses' testimony "at the Grand Jury may be inconsistent with the other statements that they have made; their testimony at the Grand Jury may contain exculpatory or impeachment information."
 {¶ 42} Based upon the Defendant's motion, the trial court was not placed on notice of any inconsistencies, as Defendant did not identify any of those inconsistencies. Recognizing the proper burden, the trial court inquired of Defendant as follows: "Is there any individualized need for that information?" Defendant's counsel responded that he desired a witness list first because he didn't "know what was said to the grand jury[.]" As Defendant attempted to use his motion as a discovery tool solely for searching for hypothetical impeachment information, we cannot say that the trial court abused its discretion in denying his motion.Laskey, 21 Ohio St.2d at 191. Simply stated, Defendant's "bald assertion * * * that he needed to examine the testimony of an adverse witness for inconsistencies failed to set forth a particularized need." State v.Mack (1995), 73 Ohio St.3d 502, 508.
 {¶ 43} In addition, this Court cannot say that Defendant properly made an in-trial request for the transcripts following questioning which revealed inconsistencies. Rather, at the close of the State's case, Defendant's counsel stated: "Can I just renew the motions I filed, Your Honor? All the motions that I filed prior to trial[.]"
 {¶ 44} The trial court had previously denied Defendant's motion for transcripts from the grand jury proceedings. We cannot find that such a broad statement from counsel renewed with specificity every pretrial motion. Further, even assuming arguendo that Defendant did renew his pretrial motion, that motion still fails to state with any specificity why Defendant is entitled to the grand jury transcripts.
 {¶ 45} In addition, Defendant asserts that the denial of his requests for the transcripts violated his constitutional rights. Specifically, Defendant asserts that J.T.'s in-trial testimony was so inconsistent that her grand jury testimony must necessarily have impeachment value and therefore constitutes exculpatory evidence which must be disclosed pursuant to Brady v. Maryland (1963), 373 U.S. 83, 10 L.Ed.2d 215 andUnited States v. Bagley (1985), 473 U.S. 667, 87 L.Ed.2d 481. We disagree.
 {¶ 46} At trial, J.T. openly admitted that she had not been honest with each of the officers during the investigation. Further, she explained the rationale behind her dishonesty. There is no indication from the record that her grand jury testimony in any way deviated from the testimony elicited by the State. Further, as noted above, Defendant never properly requested transcripts of J.T.'s grand jury testimony after her in-trial testimony.
 {¶ 47} This Court is not inclined to presume that the State has committed a Brady violation absent some affirmative evidence from the record. Accordingly, Defendant's fourth and fifth assignments of error are overruled.
 ASSIGNMENT OF ERROR VII
"Defendant's convictions and sentences for felonious assault violate R.C. 2941.25 and the Double Jeopardy clauses of the Ohio and [U.S.] Constitutions"
 {¶ 48} In his seventh assignment of error, Defendant asserts that his felonious assault convictions should have merged and that the trial court erred when it sentenced him for both convictions. This Court disagrees.
 {¶ 49} R.C. 2941.25 provides as follows:
"(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
"(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them." R.C. 2941.25.
"In applying this statute, courts have used a two-step analysis. The first step requires a comparison of the elements of the offenses in the abstract. Allied offenses of similar import are those offenses that correspond to such a degree that the commission of one offense will result in the commission of the other. State v. Rance [(1999)],85 Ohio St.3d 632, 638-639 * * *; State v. Mitchell (1983), 6 Ohio St.3d 416[.]
"If the court finds that the offenses are allied offenses of similar import, it must proceed to the second step of the analysis, which involves a review of the defendant's conduct to determine whether the offenses were committed separately or with a separate animus as to each.Mitchell, [6 Ohio St.3d at 418]; State v. Gregory (1993),90 Ohio App.3d 124, 128-129[.]" State v. Murray, 156 Ohio App.3d 219,2004-Ohio-654, at ¶ 17-18.
 {¶ 50} This Court concludes that pursuant to the first step of Rance,
the crimes involved here are not so similar that commission of one will result in the commission of the other.[1] R.C. 2903.11(A)(1) provides as follows: "No person shall knowingly * * * [c]ause serious physical harm to another[.]" In contrast, R.C. 2903.11(A)(2) provides as follows: "No person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon[.]" Accordingly, we cannot say that committing a violation of R.C. 2903.11(A)(1) will also result in a violation of R.C. 2903.11(A)(2). R.C. 2903.11(A)(2) requires that the State prove a separate and distinct element, i.e., the use of a deadly weapon. Accordingly, Defendant cannot satisfy the first prong of the Rance test and the trial court properly denied his motion to merge his felonious assault convictions. Murray, at ¶ 19. Defendant's seventh assignment of error is overruled.
 ASSIGNMENT OF ERROR VIII
"The sentence imposed upon [Defendant] must be vacated because it was rendered in violation of his right to trial by jury under the Fourteenth Amendment and Article 1, § 10 of the Ohio Constitution. The decisions of this Court to the contrary do not constitute correct statements of law and must be overruled."
 ASSIGNMENT OF ERROR X
"Ohio's sexual predator statute violates Blakely v. Washington."
 {¶ 51} In his eighth and tenth assignments of error, Defendant argues that the trial court engaged in unconstitutional fact finding in order to impose sentence on him. Specifically, Defendant asserts that Blakely v.Washington (2004), 542 U.S. 296, compels reversal of his sentence. We disagree.
 {¶ 52} This Court has previously held that Blakely is inapplicable to Ohio's sentencing scheme. State v. Rowles, 9th Dist. No. 22007,2005-Ohio-14, at ¶ 19. Additionally, we have held that U.S. v. Booker
(2005), 125 S.Ct. 738, provided no rationale for this Court to revisit our prior holding. State v. Burns, 9th Dist. No. 22198, 2005-Ohio-1459, at ¶ 5. Accordingly, Defendant's eighth and tenth assignments of error are overruled
 ASSIGNMENT OF ERROR IX
"The classification of [Defendant] as a sexual predator must be vacated because the trial court failed to comply with the statutory requirements as mandated by the precedent of the Ohio Supreme Court. Furthermore, the Trial Court violated [Defendant's] rights under the Ohio and [U.S.] Constitutions by summarily adjudicating him a sexual predator without an adequate evidentiary basis."
 {¶ 53} In his ninth assignment of error, Defendant asserts that the trial court erred when it adjudicated him a sexual predator. This Court disagrees.
 {¶ 54} This Court will overturn a sexual predator determination only upon a finding that the trial court's decision was clearly erroneous.State v. Unrue, 9th Dist. No. 21105, 2002-Ohio-7002, at ¶ 6. As long as some competent, credible evidence supports the classification, we must affirm the court's decision. Id. In other words, reversal is reserved for exceptional cases where a judgment is so contrary to all reasonable inferences which could be drawn from the evidence that the result is a "complete violation of substantial justice[.]" Shepherd v. Freeze,
9th Dist. No. 20879, 2002-Ohio-4252, at ¶ 8, quoting Royer v. Bd. of Edn.
(1977), 51 Ohio App.2d 17, 20.
 {¶ 55} Under R.C. 2950.01(E)(1), the definition of sexual predator includes an individual who has been convicted of committing a sexually-oriented offense and "is likely to engage in the future in one or more sexually oriented offenses." When classifying an individual as a sexual predator, the trial court must consider all relevant factors, including those stated in R.C. 2950.09(B)(3). While the trial court is required to consider every statutory factor, the court need not find that every factor applies in order to determine that an individual is a sexual predator. State v. Smith (June 2, 1999), 9th Dist. No. 18622, at 5. The trial court's determination must be supported by clear and convincing evidence. State v. Bolyard, 9th Dist. No. 20801, 2002-Ohio-2203, at ¶ 10.
 {¶ 56} Defendant asserts error in the trial court's failure to follow the model sexual predator hearing laid out by State v. Eppinger (2001),91 Ohio St.3d 158, 166.
"In a model sexual offender classification hearing, there are essentially three objectives. First, it is critical that a record be created for review. Therefore, the prosecutor and defense counsel should identify on the record those portions of the trial transcript, victim impact statements, presentence report, and other pertinent aspects of the defendant's criminal and social history that both relate to the factors set forth in R.C. 2950.09(B)(2) and are probative of the issue of whether the offender is likely to engage in the future in one or more sexually oriented offenses. If the conviction is old, as in this case, the state may need to introduce a portion of the actual trial record; if the case was recently tried, the same trial court may not need to actually review the record. In either case, a clear and accurate record of what evidence or testimony was considered should be preserved, including any exhibits, for purposes of any potential appeal.
"Second, an expert may be required, as discussed above, to assist the trial court in determining whether the offender is likely to engage in the future in one or more sexually oriented offenses. Therefore, either side should be allowed to present expert opinion by testimony or written report to assist the trial court in its determination, especially when there is little information available beyond the conviction itself. While providing an expert at state expense is within the discretion of the trial court, the lack of other criteria to assist in predicting the future behavior of the offender weighs heavily in favor of granting such a request.
"Finally, the trial court should consider the statutory factors listed in R.C. 2950.09(B)(2), and should discuss on the record the particular evidence and factors upon which it relies in making its determination regarding the likelihood of recidivism.
"We are cognizant of our statement in State v. Cook, supra, that R.C. 2950.09 does not require the court to list all criteria, but only to consider all relevant factors in making its findings. However, we also noted in Cook that the sexual offender classification hearing in that case was not a model hearing. Therefore, we are suggesting standards for the trial courts that will aid the appellate courts in reviewing the evidence on appeal and ensure a fair and complete hearing for the offender." (Internal citations omitted.) Id. at 1661-67.
This Court notes that Eppinger only discusses a model hearing, it makes no requirement that a trial court actually take the steps listed above. Further, in Eppinger, the defendant moved for an expert and the trial court denied his motion. Id. at 165. We find that Defendant has waived any alleged error with respect to the trial court's departure fromEppinger. At the hearing, Defendant never attempted to introduce any evidence, despite the trial court permitting him to do so. Further, on appeal Defendant claims that the trial court relied upon evidence that was outside the record and violated his right to due process. Again, however, Defendant did not object to any portion of the sexual predator hearing.
 {¶ 57} In the instant matter, the trial court conducted the sexual predator hearing in conjunction with Defendant's sentencing hearing as permitted by R.C. 2950.09(B)(2). In making its determination, a trial court must consider all relevant factors, including the following, which are contained in R.C. 2950.09(B)(3):
"(a) The offender's * * * age;
"(b) The offender's * * * prior criminal * * * record * * *, including, but not limited to, all sexual offenses;
"(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed * * *;
"(d) Whether the sexually oriented offense for which sentence is to be imposed * * * involved multiple victims;
"(e) Whether the offender * * * used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
"(f) If the offender * * * previously has been convicted of or pleaded guilty to a * * * criminal offense, whether the offender * * * completed any sentence * * * imposed for the prior offense * * * and, if the prior offense * * * was a sex offense or a sexually oriented offense, whether the offender * * * participated in available programs for sexual offenders;
"(g) Any mental illness or mental disability of the offender * * *;
"(h) The nature of the offender's * * * sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
"(i) Whether the offender * * *, during the commission of the sexually oriented offense for which sentence is to be imposed * * *, displayed cruelty or made one or more threats of cruelty;
"(j) Any additional behavioral characteristics that contribute to the offender's * * * conduct."
 {¶ 58} While the trial court must consider all the factors listed in R.C. 2950.09(B)(3), not every factor need be established before a Appellant is adjudicated a sexual predator. State v. Smith (June 2, 1999), 9th Dist. No. 18622, at 5. At the hearing, the State argued that the offender's age, the Defendant's use of alcohol to impair the victim, the Defendant's prior criminal history, the nature of the sexual contact, the pattern of abuse demonstrated by the attack, and the Defendant's threats of cruelty supported a finding that Defendant is a sexual predator. At the hearing and on appeal, Defendant has not challenged any of these contentions.
 {¶ 59} Our review of the record supports the State's argument that these factors were all evidenced by the crimes for which Defendant was convicted. There is no question that Defendant has a prior criminal record, and the trial court correctly noted that his past did not include convictions for sexual crimes. Further, there was ample testimony during the trial that J.T. was impaired by the use of alcohol that Defendant had purchased prior to the attack. Accordingly, this Court cannot say that Defendant's adjudication as a sexual predator was clearly erroneous. Defendant's ninth assignment of error is overruled.
 ASSIGNMENT OF ERROR XI
"The Ohio sexual predator statute is unconstitutionally vague as applied to Defendant[.]"
 {¶ 60} In his eleventh assignment of error, Defendant contends that Ohio's sexual predator statute is unconstitutional. This Court finds that Defendant's contention lacks merit.
 {¶ 61} A defendant's failure to raise a constitutional argument to the trial court constitutes a waiver of that issue for the purposes of an appeal. State v. White (June 16, 1999), 9th Dist. No. 19040, at 9; Statev. Awan (1986), 22 Ohio St.3d 120, syllabus. Therefore, Defendant has waived this argument and cannot raise it now on appeal. Accordingly, Defendant's eleventh assignment of error is overruled.
 ASSIGNMENT OF ERROR XII
"The trial court erred in resentencing [Defendant] when it lacked jurisdiction to do so."
 {¶ 62} In his final assignment of error, Defendant contends that the trial court erred in resentencing him following the filing of his notice of appeal. This Court agrees.
 {¶ 63} On March 11, 2005, the trial court attempted to resentence Defendant to inform of him of post-release control.
"Once Appellant perfected an appeal from his * * * sentence, any action by the trial court on the sentencing issue would be inconsistent with this court's jurisdiction to reverse, modify or affirm the judgment. Consequently, when the trial court held [an] additional hearing and `resentenced' Appellant in December 1998, it did so without jurisdiction and its judgment on the matter is void." State v. Marvin (1999),134 Ohio App.3d 63, 66.
Accordingly, the trial court's March 11, 2005 order is void. This Court, however, makes no determination regarding whether the trial court can resentence Defendant following the conclusion of this appeal. SeeState v. Neville, 9th Dist. No. 02CA0001, 2002-Ohio-5422, at ¶ 7. Defendant's twelfth assignment of error is sustained.
 {¶ 64} Appellant's first eleven assignments of error are overruled. Appellant's twelfth assignment of error is sustained. The trial court's March 11, 2005 order is vacated, and the remainder of the trial court's judgment is affirmed and the cause remanded.
Judgment affirmed in part, reversed in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to both parties equally.
Exceptions.
Whitmore, J., Batchelder, J., Concur.
[1] Contrary to our sister court's position in State v. Grant (Mar. 23, 2001), 1st Dist. No. C-97 1001, Rance's two prong test was not abandoned in State v. Fears (1999), 86 Ohio St.3d 329. To the contrary, the Fears court found that "implicit within every robbery * * * is a kidnapping", thus concluding the first prong of the Rance test. (Citations omitted.) Id. at 344.