DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Denny Ross, appeals from the judgment of the Summit County Court of Common Pleas which denied his petition for post-conviction relief. This Court affirms.
 I. {¶ 2} Following a jury trial, appellant was found guilty of attempted murder, rape, felonious assault, and intimidation of a crime victim or witness from his initial indictment, and guilty of kidnapping and felonious assault from a supplemental indictment. On direct appeal, this Court affirmed appellant's convictions. See State v. Ross, 9th Dist. Nos. 22447, 22598,2005-Ohio-5189. On appeal to the Ohio Supreme Court, appellant was ordered resentenced, but his convictions were left undisturbed. See In re Ohio Criminal Sentencing Statutes Cases,109 Ohio St.3d 313, 2006-Ohio-2109.
 {¶ 3} On August 24, 2005, during the pendency of his direct appeal, appellant filed a petition for post-conviction relief in the trial court. In his petition, appellant asserted that the State used perjured testimony against him and that the State wrongfully withheld exculpatory information. The State responded to appellant's petition, moving to dismiss it without an evidentiary hearing. The trial court agreed with the State's contention, found that appellant had produced insufficient evidence to warrant a hearing, and dismissed appellant's petition. Appellant timely appealed the dismissal of his petition for post-conviction relief, raising four assignments of error for review. For ease of analysis, we have rearranged appellant's assignments of error.
 II. SECOND ASSIGNMENT OF ERROR
"THE TRIAL COURT ERRED IN DENYING DEFENDANT ROSS' REQUEST FOR AN EVIDENTIARY HEARING IN SUPPORT OF HIS PETITION FOR POST-CONVICTION RELIEF."
 {¶ 4} This Court reviews a trial court's decision not to hold a hearing on a petition for post-conviction relief for an abuse of discretion. State v. Houser, 9th Dist. No. 21555,2003-Ohio-6811, at ¶ 12. Abuse of discretion requires more than simply an error in judgment; it implies unreasonable, arbitrary, or unconscionable conduct by the court. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 5} R.C. 2953.21(A)(1)(a) provides as follows:
"Any person who has been convicted of a criminal offense * * * who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States * * * may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief."
In addition, R.C. 2953.21(E) provides:
"Unless the petition and the files and records of the case show the petitioner is not entitled to relief, the court shall proceed to a prompt hearing on the issues even if a direct appeal of the case is pending.
If the court notifies the parties that it has found grounds for granting relief, either party may request an appellate court in which a direct appeal of the judgment is pending to remand the pending case to the court."
 {¶ 6} Based upon this Court's resolution of appellant's remaining assignments of error, we find no abuse of discretion in the trial court's determination that the record shows that appellant is not entitled to relief. Appellant's second assignment of error, therefore, is overruled.
 FIRST ASSIGNMENT OF ERROR
"THE COURT OF COMMON PLEAS ERRED IN DISMISSING DEFENDANT ROSS' AMENDED PETITION FOR POST-CONVICTION RELIEF WITHOUT DISCLOSING THE GRAND JURY TESTIMONY OF [THE VICTIM] TO DEFENSE COUNSEL OR CONDUCTING AN IN CAMERA EXAMINATION OF [THE VICTIM'S] GRAND JURY TESTIMONY."
 {¶ 7} In his first assignment of error, appellant asserts that the trial court erred when it failed to examine the victim's grand jury testimony before dismissing his petition. This Court disagrees.
 {¶ 8} During his direct appeal, appellant challenged the trial court's decision denying his motion to review the victim's grand jury testimony. This Court found no error in the trial court's decision. Ross at ¶ 45-47. Accordingly, appellant's claims regarding the grand jury testimony are barred by res judicata.
"Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment." State v. Perry
(1967), 10 Ohio St.2d 175, paragraph nine of the syllabus.
Appellant was given the opportunity to litigate the issue of whether the victim's grand jury testimony should have been released. As a result, res judicata bars appellant from asserting that those transcripts must be released.
 {¶ 9} Furthermore, this Court notes that appellant's request for review of the grand jury transcripts relies upon the identical rationale expressly rejected by this Court on direct appeal. Ross at ¶ 38-47. In his petition, appellant again alleged that the victim's trial testimony was so inconsistent that it must have contradicted her grand jury testimony and appellant again alleged that the State had committed a Brady
violation by refusing to release the grand jury testimony. These claims lacked merit on direct appeal, and appellant has offered no explanation as to why they were not properly summarily rejected by the trial court under both the law of the case doctrine and res judicata. Accordingly, this Court finds no error in the trial court's refusal to disclose the victim's grand jury testimony. Appellant's first assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR
"THE TRIAL COURT ERRED IN HOLDING THAT DEFENDANT ROSS HAD NOT MADE A PRIMA FACIE SHOWING OF A CONSTITUTIONAL VIOLATION BASED ON THE USE OF PERJURED TESTIMONY BY THE PROSECUTION."
 {¶ 10} In his third assignment of error, appellant contends that the trial court erred in finding that he had not alleged operative facts which demonstrated that the State relied upon perjured testimony. This Court disagrees.
 {¶ 11} In support of his argument, appellant relies uponNapue v. Illinois (1959), 360 U.S. 264. In Napue, the U.S. Supreme Court held that a conviction which resulted from the use of perjured testimony violates the Fourteenth Amendment. Id. at 269. The record before this Court does not support appellant's contentions that he demonstrated that the victim committed perjury during his trial.
1. Civil Protection Order
 {¶ 12} Appellant first asserts that the State's questioning of the victim was so misleading that it amounted to the use of false testimony. Specifically, appellant relies upon the following which occurred during the victim's direct testimony:
"Q. Okay. And do you recall testifying — or let me back up. Did you obtain a civil protection order against your husband at one point?
"A. Yes.
"Q. And did you revoke that protection order?
"A. Yes."
Appellant admits that none of the above testimony is false. In support of his petition, however, appellant attached evidence which demonstrated that the victim had obtained another civil protection order against her husband, the day before testifying. Accordingly, appellant asserts that the victim's testimony was "obviously misleading and obviously prejudicial." This Court disagrees.
 {¶ 13} Appellant's argument wholly removes the State's questioning from its context. The above questions were asked about past events in the victim's life. After testifying that she had revoked the civil protection order, the victim stated that she had testified in her husband's trial several months earlier regarding the threats which led to the protection order. Accordingly, the State elicited no testimony regarding the victim's relationship with her husband at the time of trial. In addition, the victim never testified that she revoked the civil protection order because she no longer feared her husband. Rather, she noted that she lied during her husband's trial for the sake of their children. As such, we cannot say that the above testimony supports any inference that the victim no longer felt threatened by her husband. This Court, therefore, cannot say that appellant has made a showing that the State elicited testimony which was so misleading that it amounted to the use of false testimony.
2. Testimony Relating to Yeager
 {¶ 14} Appellant asserts that he also alleged sufficient facts to demonstrate that the victim committed perjury with regard to facts involving Daniel Yeager. This Court disagrees.
 {¶ 15} Initially, we note that in reviewing affidavits submitted in support of a petition, a trial court may use its discretion in deciding whether to accept the statements as true.State v. Calhoun (1999), 86 Ohio St.3d 279, 284. In determining the credibility of the submitted affidavits, the trial court should consider the following factors:
"(1) whether the judge reviewing the postconviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial. Moreover, a trial court may find sworn testimony in an affidavit to be contradicted by evidence in the record by the same witness, or to be internally inconsistent, thereby weakening the credibility of that testimony." Id. at 285.
 {¶ 16} In the instant matter, the trial court was presented with several factors which lessened the credibility of appellant's evidence. First, the sole affidavit attached to appellant's petition, broadly asserts that "[t]he factual allegations set forth in this Petition have been developed through a review of the trial transcript, the interview of witnesses and from the reports of an investigator who was hired post-trial to re-investigate various aspects of the case." With respect to the factual allegations regarding Yeager, appellant's petition relies upon an affidavit filed by his counsel which relies upon the hearsay statements of an investigator. In turn, the reports and statements of the investigator rely upon the hearsay statements of Yeager himself. As such, the affidavit contains multiple layers of hearsay. Furthermore, Yeager was interviewed while incarcerated for narcotics convictions. Appellant's evidence, therefore, is less than persuasive and lacks credibility.
 {¶ 17} Assuming arguendo, however, that appellant's alleged evidence is given some value, his claims still must fail. In his petition, appellant alleged that Yeager contradicted several of the assertions made by the victim. Yeager asserts that the victim did not indicate that she knew him, but she testified under oath that she knew him. Yeager further asserts that the victim asked him to buy her drugs, but she testified under oath that she had made no such request. Neither assertion, however, compels a finding that the victim committed perjury.
A. Yeager's Identity
 {¶ 18} With regard to the assertion that the victim never indicated that she knew Yeager, appellant has not identified any false statement made by the victim. In his petition, appellant stated that "Petitioner believes that [the victim] did not give any indication to Yeager on the night of June 15-16 that she knew his identity. If proven, this would support an inference that [the victim] did not know Yeager's identity[.]" Appellant, however, does not assert that the victim lied about knowing Yeager's identity. Rather, he asserts that the victim did not tell Yeager that she knew him. During her trial testimony, the victim noted that she would not have accompanied appellant if she had not known Yeager. The victim indicated that Yeager had been friends with her brother and that she had known him when she was younger through that friendship. Appellant submitted no evidence, of any kind, which contradicts the victim's testimony that she knew Yeager. The mere fact that the victim did not say, "I know you, you're Daniel Yeager," does not contradict the victim's detailed explanation of how she knew Yeager's identity.
B. Drugs
 {¶ 19} Next, appellant asserts that the victim lied about asking Yeager to provide her with drugs. Specifically, appellant asserts that Yeager indicated during a post-trial interview that the victim had asked him to "score" her "some crack." While these quotations appear in his petition, it is unclear from what source appellant draws his quote. However, assuming that this is a direct quote from Yeager, appellant has not demonstrated facts which entitle him to relief.
 {¶ 20} Based upon appellant's petition, the trial court was left with the sworn testimony of the victim that she did not ask Yeager for drugs and the hearsay statement of appellant's counsel derived from an investigator's report which in turn was created from hearsay statements made by a convicted felon. Accordingly, this Court finds no abuse of discretion in the trial court's determination that appellant's evidence lacked sufficient credibility to demonstrate that the victim committed perjury.
Cumulative
 {¶ 21} Finally, appellant asserts that the victim changed her story so many times during the course of the investigation that she must have committed perjury. This Court finds no support for such an argument.
 {¶ 22} During cross-examination, appellant's counsel demonstrated that the victim had given numerous inconsistent statements to the police. In his petition, appellant asserts that because of these inconsistencies, "[t]he government was clearly on notice that [the victim] was likely to commit perjury[.]" Not only is appellant's final assertion conclusory without factual support, it fails to allege a single instance of false testimony given by the victim. The mere fact that a victim has given prior inconsistent statements does not demonstrate that she lied under oath. During her trial testimony, the victim admitted to making these prior inconsistent statements and explained her rationale for doing so. Accordingly, appellant failed to introduce any credible evidence that the victim committed perjury. Appellant's third assignment of error, therefore, is overruled.
 FOURTH ASSIGNMENT OF ERROR
"THE TRIAL COURT ERRED IN APPLYING THE DOCTRINE OF RES JUDICATA TO CLAIMS FOR RELIEF WHICH RELIED ON EVIDENCE WHICH WAS NOT CONTAINED IN THE TRIAL RECORD AT THE TIME OF DEFENDANT ROSS' DIRECT APPEAL."
 {¶ 23} In his fourth assignment of error, appellant contends that the trial court erred in relying upon the doctrine of res judicata with respect to certain of his claims. Specifically, appellant argues that the trial court could not use res judicata to defeat his request for grand jury transcripts and to defeat his alleged Brady violation. This Court finds no merit in appellant's final assignment of error.
 {¶ 24} As noted above, the trial court did not err in utilizing the doctrine of res judicata to refuse appellant's request for release of the victim's grand jury testimony. Appellant previously litigated, unsuccessfully, the issue of whether he was entitled to review those transcripts. The mere fact that those transcripts were not contained in his direct appeal did not prevent this Court, in any manner, from reviewing appellant's arguments regarding their release. Accordingly, there exists no bar that would prevent the trial court's use of res judicata as it relates to the grand jury transcripts.
 {¶ 25} In further support of his petition, appellant asserted that the State violated the dictates of Brady v. Maryland
(1963), 373 U.S. 83, when it failed to disclose exculpatory evidence. Specifically, appellant asserts that the State failed to disclose that the victim had charges pending against her in municipal court. In State v. Cureton, 9th Dist. Nos. 03CA0009-M, 03CA0010-M, 2003-Ohio-6010, this Court held:
"All the documents, which [the defendant] alleges were withheld, were in existence at the time of the trial. [The defendant] claims that if he had had these documents at trial, he could have used them to impeach prosecution witnesses. If [the defendant] had requested the documents pursuant to Crim.R. 16 and they were not disclosed, [the defendant] could have raised this issue upon direct appeal. Likewise, his argument that he could have impeached witnesses at trial with the documents, which would have resulted in his acquittal, could have also been raised on direct appeal. Therefore, these arguments regarding prosecutorial misconduct are barred by the doctrine of res judicata." Id. at ¶ 13.
 {¶ 26} Appellant, however, asserts that since the fact that charges were pending against the victim was not in the record for his direct appeal, he could not raise his Brady claim therein. Assuming arguendo that appellant's assertions bar the use of the doctrine of res judicata, this Court finds that any error by the trial court was harmless.
 {¶ 27} While Ohio has not addressed this precise issue, we agree in general with the holding of the Kentucky Supreme Court which found that Brady "does not require that a party disclose information which is part of a public record[.]" Sanborn v.Kentucky (1994), 892 S.W.2d 542, 556. In Brady, the Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process[.]" Brady,373 U.S. at 87. To suppress means to "to prevent (something) from being seen, heard, known, or discussed[.]" Black's Law Dictionary (7 Ed. 1999) 1454. While this Court does not adopt a blanket rule that prevents a finding that the State has violated Brady
solely based upon the fact that information is contained in a public record, the facts herein support a finding that no violation occurred.
 {¶ 28} In the instant matter, the State did nothing to prevent appellant from learning of the charges against the victim. Furthermore, there is no evidence in the record that the State in fact knew of the charges pending against the victim when appellant requested discovery and failed to inform appellant of those charges. In addition, appellant has cited no authority and this Court has found no authority that would require the State to independently investigate each of its witnesses for information that a defendant may deem exculpatory. As appellant indicated in his petition, the charges pending against the victim were discovered by independent investigation. There is no evidence of any kind that they were contained in the State's file or that anyone under the control of the prosecutor was aware of the charges at the time of trial. Accordingly, appellant failed to allege a Brady violation.
 {¶ 29} Appellant's fourth assignment of error, therefore, is overruled.
 III. {¶ 30} Appellant's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
Slaby, P.J. Boyle, J. concur.